**Robert W. KROMBACH, et al., Plaintiffs–Appellants,**

v.

**The MAYFLOWER INSURANCE COMPANY, LTD., Defendant–Respondent.**

**Joseph R. FOX, et al., Plaintiffs–Appellants,**

v.

**The MAYFLOWER INSURANCE COMPANY, LTD., Defendant–Respondent.**

No. 74147.

Supreme Court of Missouri, En Banc.

March 24, 1992.

Toni Griesbach, St. Louis, for plaintiffs-appellants.

Anthony F. Vaiana, Dennis L. Callahan, St. Louis, for defendant-respondent.

HOLSTEIN, Judge.

Plaintiffs, Robert W. Krombach, Mary Krombach, Joseph R. Fox, and Susan Fox, appeal from a second[1] order granting summary judgment in favor of defendant Mayflower Insurance Company, Ltd. (Mayflower) on the plaintiffs' claims filed to enforce the "underinsured" motorist provision of an automobile liability insurance policy. Following opinion by the Missouri Court of Appeals, this Court granted transfer. *Rule 83.03.* The judgment is reversed and remanded.

## I.

In August of 1986, Robert and his wife, Mary Krombach, were the named insureds in an automobile liability insurance policy issued by Mayflower. The policy insured two of the Krombachs' vehicles, one of which was a 1984 Honda. On August 15,

---

1. The first order granting summary judgment was reversed. *Krombach v. Mayflower Ins. Co., Inc.,* 785 S.W.2d 728 (Mo.App.1990) (*Krombach I*).

1986, Robert Krombach was operating the Honda on Big Bend Boulevard in St. Louis County. Krombach's passenger was fourteen-year-old Casey Lee Fox. Richard Bolin's vehicle was approaching from the opposite direction. Bolin, who was intoxicated, drove across the center line striking the Krombach vehicle head-on. Krombach was severely injured and Casey Fox was killed. Joseph and Susan Fox, Casey's parents, sued Bolin for wrongful death. Krombach and his wife sued Bolin for damages due to personal injury and loss of consortium, respectively. Robert Krombach settled his claim against Bolin for $100,000. Mary settled her consortium claim for $50,000, and the Foxes settled their claim for $100,000. The maximum coverage under Bolin's policy was $100,000 per person and a maximum of $300,000 per accident.

Claims were then filed by the Foxes and the Krombachs against Mayflower in the Circuit Court of St. Louis County. The cases were consolidated. Following the first round of motions for summary judgment, the trial court entered judgment in favor of Mayflower. While this Court was not provided with a full record, apparently one basis for granting the first summary judgment was the trial court's determination that the Mayflower policy limited "underinsured" coverage to situations where the tortfeasor had liability coverage less than the Mayflower policy's "uninsured" motorist coverage. The judgment was reversed on appeal because the policy was found to be ambiguous and, as construed, the policy was held to provide "underinsured" motorist coverage for the "total damages the Krombachs and Foxes sustained." *Krombach I*, 785 S.W.2d at 735. The appellate court specifically declined to decide whether the anti-stacking and setoff provisions of the policy entitled Mayflower to summary judgment because the trial court had not addressed those issues.

On remand, a second round of motions for summary judgment were filed. Mayflower asserted that it was entitled to summary judgment because 1) the plaintiffs were not entitled to stack the coverage of the two policies, and 2) the amounts re-

ceived from the tortfeasor were required to be set off against the amount that was payable by Mayflower under the underinsured motorist provision of the policy. The trial court noted that the plaintiffs had received more than $100,000 and "any amounts payable by [Mayflower] are to be reduced by all sums paid by or on behalf of the alleged uninsured (underinsured) tortfeasor." Summary judgment was entered denying plaintiffs any relief.

## II.

On appeal, the single issue presented by plaintiffs is the question of how the setoff for the recovery against Bolin's insurance should be calculated. To resolve that question involves a construction of the insurance contract. Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *American Family Mutual Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990). Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Robin v. Blue Cross Hospital Services, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). Where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Behr v. Blue Cross Hospital Service, Inc.*, 715 S.W.2d 251, 255 (Mo. banc 1986). There are at least two reasons for this rule of construction. First, insurance is designed to furnish protection to the insured, not defeat it. *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623, 626 (Mo. banc 1979). Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage

already granted, or introducing exceptions or exemptions must be strictly construed against the insurer. *Meyer Jewelry Co. v. General Insurance Co. of America,* 422 S.W.2d 617, 623 (Mo.1968); *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707, 710–11 (Mo.1964). Second, as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract. As noted by Judge Learned Hand, "[T]he canon contra proferentem is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter ... Insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Gaunt v. John Hancock Mutual Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir. 1947).

The critical portions of Mayflower policy state as follows:

PART 6: UNINSURED (AND UNDERINSURED) MOTORIST

....

B. UNINSURED MOTORIST COVERAGE

We will pay damages which a Covered Person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
(a) sustained by
  1. covered person; and
(b) caused by an accident.

....

D. MAXIMUM PAYMENTS UNDER YOUR UNINSURED MOTORIST COVERAGE.

The most we will pay for all claims from a single accident is the Limit of Coverage shown on the Coverage Data Page.

....

Any amounts payable under Part 6 shall be reduced by all sums:
(a) paid because of bodily injury by or on behalf of someone who may be liable.

....

The "Coverage Data Page" indicates that the limit of coverage for uninsured (and underinsured) motorist coverage is $50,000 for each accident. If "amounts payable under Part 6" means "damages which a Covered Person is legally entitled to recover" from the tortfeasor, as is stated in subpart B of Part 6, then plaintiffs are entitled to recover all damages in excess of the amount paid by Bolin's insurer up to the limits of the coverage. If "amounts payable under Part 6" means only damages up to the maximum amount of underinsured motorist coverage, as stated in subpart D of Part 6, plaintiffs are not entitled to additional sums under the policy because Bolin's insurer had already paid plaintiffs an amount equal to or in excess of the underinsured motorist coverage.

■ The problem with the policy provisions quoted above is that both 1) the tortfeasor's total liability and 2) the underinsured motorist coverage limits are referred to as "amounts payable" in the text of Part 6. However, the reduction clause does not say which "amount payable" is intended. Had Mayflower intended to reduce the coverage limits by any amount paid by a tortfeasor or his insurer, Mayflower could have so stated in plain and unequivocal terms. For example, see the language of the policy in *Rodriguez* where the policy plainly stated "[T]he limit of liability [previously defined] shall be reduced by all sums paid by or on behalf of" the tortfeasor. 808 S.W.2d at 381. *See also Wibbenmeyer v. American Family Mutual Ins. Co.,* 946 F.2d 569 (8th Cir.1991). Having failed to make clear which "amount payable" was intended, the insurer must bear the burden of the resulting confusion. This Court holds that the ambiguity must be construed in favor of coverage. Accordingly, the reduction will be made from the total damages caused by Bolin rather than from the limit of the coverage.

III.

The issue of stacking has been addressed by the parties but was not decided by the trial court. To avoid the possibility of a third appeal prior to final judgment in this case, we undertake a determination of the validity of the anti-stacking provisions of

the policy. As previously noted, the limitations of uninsured (underinsured) motorist coverage is set forth on the Coverage Data Page and is $50,000 per accident. If the parties are allowed to stack the coverage for two vehicles, that would provide a potential pool of coverage totaling $100,000. Both the Krombachs and the Foxes claim that they are entitled to stack the policies. As this Court views the precedents, only the Krombachs are entitled to stack the policies.

■■■ The relevant anti-stacking provisions of this policy are found in Part 6D, which states,

> The most we will pay for all claims from a single accident is the Limit of Coverage for Uninsured Motorist Coverage shown on the Coverage Data Page. This is the most that we will pay regardless of the number of:
>
> . . . .
>
> (c) Vehicles or premiums shown on the Coverage Data Page.
>
> . . . .

The provisions in an insurance policy limiting the insured to recovery for only one of the uninsured motorist coverages provided for each of two cars covered by a single policy are prohibited by the public policy expressed in § 379.203, RSMo 1986. *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538, 542 (Mo. banc 1976). There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of underinsured motorist coverage and its ability to be stacked are ordinarily determined by the contract. *Rodriguez*, 808 S.W.2d at 383. In some policies, however, underinsured motorist coverage and uninsured motorist coverage are lumped into the same provisions of the policy. Where the insurance carrier lumps apples and oranges together and calls the entire class "apples," the courts have treated it as such. *Maxon v. Farmers Ins. Co.*, 791 S.W.2d 437, 438–39 (Mo.App.1990); *Tegtmeyer v. Snellen*, 791 S.W.2d 737 (Mo. App.1990). The same public policy that invalidates anti-stacking provisions of uninsured motorist coverage is equally applicable to underinsured motorist coverage if the two are treated as the same in the insurance contract. The preparer of the insurance contract may not collect premiums for mandated insurance coverage and then by anti-stacking provisions deny multiple coverage. *Maxon*, 791 S.W.2d at 439. As to the Krombachs, the coverages for the two vehicles may be stacked.

The Foxes stand on different ground. In *Hines v. Government Employees Ins. Co.*, 656 S.W.2d 262 (Mo. banc 1983), the insured gave Hines permission to use one of two cars insured under a policy containing an uninsured motorist provision with an anti-stacking clause. Hines was driving with two passengers in the automobile when the insured automobile collided with a vehicle negligently operated by an uninsured motorist. Hines and his two passengers suffered injuries which, combined, caused damages in excess of a single uninsured motorist coverage. The question arose as to whether the policies on both vehicles could be stacked under the holding in *Cameron Mutual*. This Court said,

> The *Cameron Mutual* opinion perceived that a decision against stacking would deny the named insured the benefit of some of the coverage which was required and which had to be paid for. It does not necessarily follow that an injured occupant who is not the owner must have recourse to all the uninsured motorist coverage the owner of the car in which he or she is present was required to pay for. The law does not even require that policies provide any uninsured motorist coverage for occupants.

*Hines*, 656 S.W.2d at 265.

■■ Thus, the passengers were not permitted to stack coverages. Applying that principle here, it is apparent that the decedent, Casey Fox, was in the same position as were the passengers in the *Hines* case. Accordingly, the Foxes are not entitled to stack the coverages.

### IV.

Assuming, without deciding, that each of the plaintiffs can establish damages in excess of the Krombachs' underinsured motorist coverage, a question may arise as to

how the proceeds of the policy are to be distributed. That determination is dependent entirely upon the amount of damages each of the plaintiffs sustained. In addition, Mary Krombach apparently did not settle for the per person maximum in Bolin's policy. This creates a question as to whether she is entitled to any additional sum. However, these questions have not been briefed by the parties nor were they addressed by the trial court. A determination of the amount of damages of each of the parties may make any question as to the distribution of the proceeds moot. For these reasons, the question of distribution of the proceeds will not be addressed at this time.

Accordingly, the summary judgment entered by the trial court is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

All concur.