**Ralph JACKSON and Ellen Jackson, his**
**wife, Plaintiffs–Respondents,**

v.

**SAFECO INSURANCE CO. OF**
**AMERICA, Defendant–**
**Appellant.**

**No. 21091.**

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 1997.

Motion for Rehearing and Transfer to
Supreme Court Denied May 22, 1997.

Application to Transfer Denied
Aug. 19, 1997.

William F. James, Wuestling & James, St. Louis, for defendant–appellant.

Spencer L. Edwards, Dempster, Barkett & Edwards. L.L.C., Sikeston, for plaintiffs–respondents.

PREWITT, Judge.

Appellants appeal from summary judgment entered in favor of Respondents on whether an insurance policy issued by Appellant provided underinsured motorist coverage for Respondents.

Respondents' daughter and two other passengers were killed when the automobile in which they were riding left the roadway and overturned. The vehicle involved was insured by a policy providing limits of $50,000 per person or $100,000 per accident. These limits resulted in payment of $33,333.33 in connection with the death of Respondents' daughter. Respondents thereafter brought suit alleging that the damages exceeded the amount recovered and that the driver of the vehicle was an underinsured motorist under the terms of a policy issued to them by Appellant.

Appellant filed a counterclaim asking the court to declare that there was no coverage for Respondents' loss under the underinsured coverage provisions of the policy as the vehicle involved was not an underinsured vehicle as defined by those provisions and that Respondents could not stack their policies to meet the requirements of the underinsured motor vehicle definition.

Both sides filed motions for summary judgments on the counterclaim, stipulating to the facts. On June 19, 1996, the trial court issued its findings of fact, conclusions of law and judgment on Appellant's counterclaim sustaining Respondents' motion and overruling that of Appellant. Specifically, the court found that the vehicle involved "was an underinsured vehicle as defined by the terms of the policy" issued to Respondents and Respondents "are entitled to stack their four (4) underinsured motorist policies in order to meet the definition of underinsured motor

vehicle" in Appellant's policy. The court determined that no just reason for delay existed and that the decision with respect to the counterclaim was a judgment from which an appeal shall lie pursuant to Rule 74.01.

On appeal, Appellant presents two points, stating in part:

I. The trial court erred in sustaining plaintiffs' motion for summary judgment and in overruling defendant's motion for summary judgment because, as a matter of law ... the underlying tortfeasor, does not meet the definition of an underinsured motorist as set forth in defendant Safeco Insurance Company of America's policy.

II. The court erred in finding ... that ... underinsured motorist coverage on the four (4) motor vehicles insured under this policy could be "stacked" in order to meet the statutory definition of an underinsured motorist and, further, in finding that defendant Safeco Insurance Company of America provided "stacked" underinsured motorist coverage limits of $200,000.

■ As a preliminary matter, we note that Appellant asks, in part, that this Court review the denial of its summary judgment motion. There is no appeal from a denial of summary judgment and its denial does not present an appealable issue. *DeCota v. J.E.M. Development Corp.*, 908 S.W.2d 884, 888 (Mo.App.1995). We therefore confine our review to the entry of summary judgment in favor of Respondents.

Summary judgment may be employed only where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law. *Marshall v. Northern Assurance Co. of America*, 854 S.W.2d 608, 609 (Mo.App.1993). On review, this Court examines the record in the light most favorable to the party against whom judgment was rendered. *Id.* Because of the parties' stipulation, there are no issues of fact unresolved, and the propriety of the trial court's order sustaining Respondents' motion for summary judgment turns solely upon questions of law.

Appellant's points relied on claim that several provisions in the policy it issued unambiguously preclude Respondent from claiming coverage under the policy. By its first point, Appellant contends that because the vehicle involved does not meet the definition of an "underinsured motor vehicle" as provided in the policy, underinsured motorist coverage was unavailable.

As defined by the policy, an " 'underinsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all other bodily injury liability bonds and policies applicable at the time of the accident is less than the applicable limits for Underinsured Motorists Coverage under this insurance." To know whether a vehicle is underinsured for purposes of determining whether coverage is available under the Respondent's policy, a comparison of the limits of liability under other insurance policies providing coverage and the limit of liability under Respondents' policy is necessary.

■ The parties agree that the only other insurance policy providing coverage for the collision had a limit of liability of $100,000 per accident or $50,000 per person. They disagree, however, as to the limit of liability under the policy issued by Appellant. The policy contains the following limit-of-liability provisions under "Part C—Uninsured/Underinsured Motorists Coverage:"

LIMIT OF LIABILITY

A. If bodily injury is sustained in an accident by you or any family member:

1. Our maximum limit of liability for all damages ... arising out of bodily injury sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage;

2. Subject to the maximum limit for "each person," our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown in the Declarations for each accident for Uninsured Motorists Coverage;

...

C. The limit of liability shown in the Declarations for Underinsured Motorists Coverage, less the sum of the limits of liability under all bodily injury liability bonds or

policies (other than this policy) applicable at the time of the accident, is our total limit of liability for all damages˙... arising out of bodily injury sustained by any one person in any one accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage, less the sum of the limits of liability under all bodily injury liability bonds or policies (other than this policy) applicable at the time of the accident, is our total limit of liability for all damages, for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits may not be stacked.

Respondents insured four vehicles under the policy issued by Appellant. The declarations page indicated a limit of liability for both uninsured and underinsured motorist coverage to be $50,000 per person or $100,000 per accident for each vehicle. Because the limit of liability under the policy for the vehicle involved in the collision was not less than that of Respondents' policy, Appellant contends the vehicle was not underinsured.

Respondents claim the limit of liability section of the policy issued by Appellant is ambiguous as to which provision applies to underinsured motorist coverage. Under provision "A." which refers to uninsured motorist coverage, Respondents claim that they would be able to stack the limits on the four vehicles covered under the policy and thereby qualify for coverage because the total limit of liability would be greater than that of the vehicle involved. Because it is not clear that provision "A." is not meant for underinsured motorist coverage, they claim it should be construed to apply.

▮ There are no statutory or public policy requirements in Missouri for underinsured motorist coverage. *Rodriguez v. General Accident Ins. Co. of America*, 808 S.W.2d 379, 383 (Mo.banc 1991). Therefore, our inquiry is limited to the policies in question.

In determining whether there is an ambiguity in the policy, the court must abide by certain rules of construction. Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 675 (Mo.App. 1996). Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Id.* However, where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Id.* Language is ambiguous if it is reasonably open to two different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Id.* Where there is an ambiguity, the insured are entitled to a resolution of the ambiguity consistent with their objective and reasonable expectations. *Id.*

> The canon *contra proferentum* is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter.... Insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.

*Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 211 (Mo.banc 1992) (quoting *Gaunt v. John Hancock Mutual Life Ins. Co.*, 160 F.2d 599, 602 (2d Cir.1947)).

Respondents rely principally on *American Economy Ins. Co. v. Cornejo*, 866 S.W.2d 174 (Mo.App.1993). There, the Eastern District of this Court examined the following underinsured policy provisions:

PART C–UNINSURED/UNDERINSURED MOTORISTS COVERAGE

. . . .

Insuring Agreement

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured" or "underinsured motor vehicle" because of "bodily injury" sustained by an "insured" and caused by an accident.

. . . .

D." Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident; however, its limit for bodily injury liability is less than the limit of the liability for this coverage.

Limit of Liability

. . . .

B. If the limit of liability is shown separately for each person and each accident, the following shall apply. If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage

2. Subject to the maximum limit for each person described in a. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage;

. . . .

The maximum limit of liability is the most we will pay regardless of the number of:

1. "insureds";

2. Claims made;

3. Vehicles or premises shown in the Schedule or in the Declarations, or

4. Vehicles involved in the accident

*Cornejo* determined that an ambiguity resulted from the establishment of policy limits for underinsured motorists coverage by reference to policy limits for uninsured motorists coverage. *Id.* at 177. This ambiguity was exacerbated by the mention of limits and premium amounts for uninsured motorists coverage but not underinsured motorist coverage on the policy's declaration pages. *Id.*

Because the policy provided underinsured and uninsured coverage together and "effectively treat[ed] both as uninsured coverage," *Cornejo* held that the underinsured coverage should be treated as uninsured coverage. *Id.* In doing so, it quoted from *Nolan v. American States Preferred Insurance Co.,* 851 S.W.2d 720, 724 (Mo.App.1993): "[T]his is equivalent to lumping apples and oranges together and calling the entire class apples. Accordingly, the entire class for purposes of determining the limit of liability will be treated as apples."

However, the mere fact that the underinsurance definition is included within the uninsured coverage section does not create an ambiguity. *See Krenski v. Aubuchon,* 841 S.W.2d 721, 729 (Mo.App.1992). In *Krenski,* the court found that although underinsured and uninsured coverage were provided under the same section, no ambiguity existed "because the policy defines and treats underinsurance coverage different [sic] from the uninsured coverage." *Id. Krenski* states that while "the form of these coverages could have been drafted into separate sections, their substance provides one coverage for the uninsured motorist situation and another coverage for an underinsured motorist situation." *Id.* Because the court found no ambiguity in these provisions, it enforced them as written.

Appellant argues the policy at issue in this case is substantively the same as that in *Krenski,* which the court concluded adequately distinguished between uninsured and underinsured coverage. The policy in *Krenski* contained the following provisions:

1. Limits of Liability

. . . .

with respect to underinsured motor vehicles, the total limit of the company's liability for all damages ... shall be the limits of liability stated in the policy declarations for underinsured motorists coverage, less the sum of the liability under all bodily injury bonds and insurance polices (other

than this policy) applicable at the time of the accident.

. . . .

2. Definitions:

. . . .

"underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all other bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability for "underinsured motorists coverage under this insurance"

. . . .

Respondents contend that because the limit-of-liability provision in this case does not contain the phrase "with respect to underinsured motor vehicles," it does not necessarily apply to underinsured coverage and that provision "A.", which describes a limit of liability as the sum of the Declarations for Uninsured Coverage, may just as likely apply to underinsured coverage. It is true that the policy might have been clearer had such language been included. But, unlike the policy in *Cornejo*, here there are two separate limit-of-liability provisions, one referring to declarations of uninsured coverage and the other to declarations of underinsured coverage. Moreover, limits for both uninsured and underinsured coverages are included on the declarations page.

We conclude that the limit-of-liability provision adequately distinguishes between the maximum liability for uninsured as opposed to underinsured coverage. As such, we hold that no ambiguity exists with respect to that provision. For purposes of determining whether the vehicle involved meets the definition of underinsured vehicle, the provision referring to Declarations for Underinsured Coverage is applicable. As discussed above, the vehicle would be excluded under this provision as it was insured under a policy with a limit that was not less than that of Respondents' policy.

■ Because the limit of liability provision for underinsured coverage has been determined to be unambiguous, Appellant's second point relied on also has merit. Under that point, Appellant argues the trial court erred in allowing Respondent to stack their underinsured coverages of the four vehicles. As discussed above, the Appellant does not treat underinsured coverage as though it were uninsured coverage and no public policy mandating underinsured motorist coverage exists in Missouri. Therefore there is no predicate for a court overruling the clear language of the policy. That language, under provision "C." clearly and unambiguously provides that "if more than one policy issued to insured applies to the same accident, the limits may not be stacked." *See Hopkins v. American Economy Ins. Co.*, 896 S.W.2d 933, 938 (Mo. App.1995). In the absence of ambiguity and in the absence of public policy requirements mandating underinsured motorists coverage, the clear language of the contract prevails. Respondents may not stack their coverages to meet the definition of underinsured motor vehicle.

■ As did the court in *Krenski*, however, we note that the policy does contain an ambiguity that would permit Respondents certain underinsured coverage. The ambiguity results from the presence of an "other insurance" or excess insurance provision.

In *Krenski*, 841 S.W.2d at 729, the Eastern District explained that the following language in the policy at issue in that case created an ambiguity:

> Underinsured motor vehicles coverage shall be excess over all bodily injury bonds and insurance policies applicable at the time of the accident.

The court determined that this provision could leave the average lay person with the "impression that coverage is provided over and above that furnished by the tortfeasor's insurance." *Id.* at 731. On the other hand, the *Krenski* policy's limit of liability provision states, as does the one in this case, that the tortfeasor liability must be subtracted from the insured's underinsured coverage to determine whether any amount is recoverable. *Id.*

The court concluded that "[t]hese clauses do not state in plain, unequivocal terms how the amount recoverable would be determined." *Id.* Interpreting these provisions in

favor of the insured's reasonable expectation, it ordered the trial court to enter judgment in favor of the insured for the full amount of the underinsured coverage allowed by the policy.

More recently, in *Zemelman*, 935 S.W.2d at 677, the Western District of this Court reversed summary judgment for the insurer on grounds that the following "Other Insurance" clause was ambiguous:

> [I]f there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

The court in *Zemelman* had determined that both the definitional and limit-of-liability provisions were unambiguous, but it found that the other insurance clause, like the one in *Krenski* "may reasonably interpreted to provide underinsured coverage as excess to amounts recovered from the tortfeasor." It held, 935 S.W.2d at 677–78:

> Where there is an "excess" or "other insurance" clause that provides the underinsured coverage is excess over all collectible insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage if the other insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor.

Like the policy in *Zemelman*, the policy in this case contains an other insurance section under which the following language is provided:

> Underinsured Motorists Coverage
>
> . . . .
>
> 2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.
>
> . . . .

There are other provisions in this section which may or may not limit the effect of this language. As far as this Court can discern,

however, the provision is substantively similar to that which the Western District found ambiguous in *Zemelman*. This court concludes that the above language could reasonably be interpreted to provide underinsured coverage as excess to amounts recovered from the tortfeasor. It therefore creates an ambiguity in relation to the limit-of-liability provision. Construed against Appellant, the other insurance clause apparently allows for coverage over and above that collected by Respondents from the tortfeasor.

Adopting the Eastern and Western Districts' approach, we hold that because of the presence of this ambiguity, Respondents should be allowed coverage in the amount available underinsured coverage provided by the policy, i.e. $50,000 over and above that which it recovered from the tortfeasor.

The judgment granting summary judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

BARNEY, P.J., and GARRISON, J., concur.