Margaret I. GOZA, Plaintiff–Respondent,

v.

**HARTFORD UNDERWRITERS INSURANCE CO., Defendant–Appellant.**

No. 73153.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 14, 1998.

Motion for Transfer to
Supreme Court Denied
June 4, 1998.

Application for Transfer Denied
Aug. 25, 1998.

P. Terence Crebs, Lori F. Kutilek, Thomas C. Burke, Herzog, Crebs & McGhee, L.L.P., St. Louis, for defendant–appellant.

Robert Keith Bennett, Bridgeton, for plaintiff–respondent.

RICHARD B. TEITELMAN, Judge.

Hartford Underwriters Insurance Company ("Hartford") appeals the trial court's judgment entered in favor of the insured, Margaret I. Goza ("Goza"), on her claim for underinsured motorists coverage. We affirm.

This case was submitted to the trial court on stipulated facts. In September of 1993 Goza sustained injuries in an accident when the vehicle she was operating collided head-on with a vehicle operated by Scott Sylcox ("Sylcox") when his vehicle entered her lane of traffic. Sylcox had coverage under a liability policy issued by his automobile insurer with limits of $100,000 per person and $300,-000 per occurrence. Goza had coverage under a policy issued by Hartford, which provided underinsured motorist (UIM) coverage with limits of $100,000 per person and $300,-000 per accident. Goza's damages from the accident exceeded $200,000. Goza brought an action against Sylcox and Hartford for damages resulting from the collision. She settled with Sylcox for his policy limits of $100,000. Hartford then denied payment to Goza. The issue is whether Goza is entitled to coverage for her damages under the UIM provisions of the Hartford policy.

The UIM provisions of the policy provide, in relevant part, as follows:

C. Underinsured motor vehicle means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of

the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \* \* \* \*

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, ... arising out of bodily injury sustained by any one person in any one accident. . . .

\* \* \* \* \* \*

However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

\* \* \* \* \* \*

OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

\* \* \* \* \* \*

The trial court held that the "Other Insurance" clause, noted above, created an ambiguity in the UIM provisions which required those provisions to be construed in favor of coverage for Goza.

■ We review this matter purely as a question of law. The interpretation of the meaning of an insurance policy is a question of law. *Buck v. American Family Mutual Ins. Co.*, 921 S.W.2d 96, 98 (Mo.App.E.D. 1996). And in a case tried on stipulated facts, the only issue on appeal is whether the court drew the proper legal conclusions from those facts. *State Farm Mutual Automobile Insurance Co. v. Sommers*, 954 S.W.2d 18 (Mo.App. E.D.1997).

There is no dispute that the definition of "underinsured motor vehicle" in the Hartford policy noted above, as well as the accompanying "Limit of Liability" language, are virtually identical to the same UIM provisions which were at issue and found to be unambiguous in *Rodriguez v. General Accident Insurance Company*, 808 S.W.2d 379, 381 (Mo. banc 1991).

In *Rodriguez*, our Supreme Court held that the insurance policy clearly stated that an underinsured vehicle is one whose limits for bodily injury liability are "less than the limit of liability for this coverage." *Id.* at 382. The *Rodriguez* court found that the tortfeasor's vehicle was therefore not an underinsured vehicle, because the policy limits on that vehicle's liability coverage were equal to the underinsured coverage limits on Rodriguez's vehicle. *Id.*

■ Similarly here, the liability limits of the coverage on the tortfeasor's vehicle were $100,000, an amount equal to the liability limit of Hartford's policy issued to Goza for underinsured motorist coverage. Since *Rodriguez* is controlling on this issue, we must find the policy terms regarding definition of underinsured and Limit of Liability to be unambiguous.

Here, however, just as in *Zemelman v. Equity Mutual Ins. Co.*, 935 S.W.2d 673 (Mo. App.W.D. 1996), Goza asserts an additional alleged ambiguity which was not discussed in the *Rodriguez* case. Goza argues that an ambiguity entitling her to UIM coverage arises from the last sentence of the Other Insurance clause in her policy with Hartford. That clause, which is identical to the one at issue and held to be ambiguous in *Zemelman*, reads as follows:

"[I]f there is other applicable similar insurance we will pay only your share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. **However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."**[Emphasis Added]

In *Zemelman* the court reasoned that since underinsured motorist coverage can reasonably be interpreted as providing "coverage for a vehicle that you do not own," the above-noted language could reasonably be interpreted as providing underinsured cover-

age which is in excess to amounts recovered from the tortfeasor. *Zemelman* at 677. Thus, the court held, where there is such an "excess" or "Other Insurance" clause which provides that underinsured coverage is excess to all other collectible insurance at the time of the accident, a court may find that such language creates an ambiguity in the policy when read in conjunction with the conflicting language as to definition of underinsured motorist coverage and "Limit of Liability", if the Other Insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor. *Zemelman,* at 677–78.

With respect to the issue raised by this appeal, we note that the analysis of *Zemelman* has also been found persuasive, and adopted, by the Southern District of this Court. *Jackson v. Safeco Insurance Company of America,* 949 S.W.2d 130, 135–36 (Mo.App. S.D.1997).

▮▮▮▮ Courts may not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Rodriguez, supra* at 382. But where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo.banc 1992). An ambiguity arises when there is duplicity, indistinctness or uncertainty in the meaning of the words used in the insurance contract. *Id.* Language is ambiguous if it is reasonably open to different constructions, and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Id.*

▮▮▮ Hartford argues that *Zemelman* and *Jackson* were "wrongly decided" and that the Other Insurance clause here at issue, whether read separately or read together with the definition of underinsured motor vehicle and Limit of Liability clause, is not truly ambiguous.

We disagree. In *Krenski v. Aubuchon,* 841 S.W.2d 721 (Mo.App. E.D.1992), the policy there at issue contained the following Other Insurance language, which is quite similar to the Other Insurance provision in this case:

Underinsured motor vehicles coverage shall be excess over all bodily injury bonds and insurance policies applicable at the time of the accident.

*Krenski,* at 729.

The court in *Krenski* held that that language, when read in conjunction with the policy's Limits of Liability subsection, created an ambiguity such that an "average lay person could be left with the impression that coverage is provided over and above that furnished by the tortfeasor's insurance." *Id.* at 731.

Hartford also contends that the tortfeasor here did not meet the policy's definition of "underinsured" and consequently Goza is not entitled to UIM benefits. It is true that because the tortfeasor's policy paid Goza the limits of its liability coverage of the tortfeasor, $100,000, an amount equal to the liability limit of Hartford's policy issued to Goza for underinsured motorist coverage, the tortfeasor therefore clearly was not operating an "underinsured motor vehicle" as that term is defined in the Hartford policy.

From there, Hartford then proceeds to argue that the definition of underinsured is the sole determinative issue in this case, and hence that the question of whether the Other Insurance clause gives rise to an ambiguity in the policy's UIM provisions should not even be reached or considered. Hartford states in its brief: "Simply put, there is no need to determine whether the 'Other Insurance' provisions may be ambiguous, because Sylcox was not an owner or operator of an underinsured motor vehicle, and, therefore, underinsured motorists benefits are not payable to Goza."

This argument begs the question on the ultimate issue of ambiguity. Obviously, if we were to limit our inquiry only to the question of whether Goza's claim comports with the policy's definition of "underinsured motor vehicle" and simply ignore altogether the existence of the Other Insurance clause, then of course Hartford's position would prevail. But Hartford has offered us no persuasive reason why the UIM provisions here at issue should be viewed separately or in isolation rather than read together.

Further, we think an objective examination of the "excess" language of the Other Insurance clause suggests not just that this language might reasonably be interpreted by an average lay person to mean underinsured coverage was excess to amounts recovered from the tortfeasor, **but also** to mean that this language prevailed over the preceding and apparently conflicting language contained in the policy's definition of underinsured and Limits of Liability sections.

Thus, we believe the trial court correctly concluded that whether the definition of "underinsured motor vehicle" is met is not a threshold issue in determining whether Goza is entitled to UIM benefits. Just as in *Zemelman*, where the definition of underinsured was identical to the one in Hartford's policy and was found to be unambiguous, so here too, the insured can still be entitled to UIM benefits even though that definition is not met if the policy's UIM provisions when read together give rise to such an ambiguity.

Finally, Hartford suggests that support for its position can be found in the recent case of *State Farm Mutual Automobile Insurance Co. v. Sommers*, 954 S.W.2d 18 (Mo.App.E.D. 1997), where an insured sought underinsured motorist benefits based on an alleged ambiguity in the policy and we upheld the trial court's judgment in favor of State Farm.

*Sommers*, however, is distinguishable from the case now before us. The court in *Sommers* found that *Zemelman v. Equity Mutual Ins. Co., supra, Jackson v. Safeco Ins. Co. of America, supra,* and *Krenski v. Aubuchon, supra*, had no application to the case before it. *Sommers*, at 19. The court there held that, whereas the "Other Insurance" clauses in *Zemelman, Jackson* and *Krenski* all contained language which "could reasonably be interpreted to provide coverage in excess of all other applicable coverage", the language in the comparable clause of Sommers' policy was significantly different, in a way that made it unambiguous and not subject to such an interpretation. *Id. Sommers* thus had a sound basis for holding that the provisions at issue there were significantly distinguishable from those in *Zemelman* and

*Jackson.* The same cannot be said for this case.

The judgment of the trial court is affirmed.

CRAHAN, C.J., dissents in separate opinion.

GERALD M. SMITH, Senior Judge, concurs in result in separate concurring opinion.

GERALD M. SMITH, Senior Judge, concurring in result.

I reluctantly concur in the opinion of Judge Teitelman, but write to express my reservations about the law that has been explicated in this area by the courts.

It is usual that automobile policies provide insurance for the named insured when operating a non-owned vehicle. Because such operation is normally with the permission of the owner of the other vehicle the liability policy of that vehicle normally also provides coverage for the permittee's operation. That concept has been carried forward into underinsured motorist coverage as evidenced by the policy before us. The named insured and any family member is provided with underinsured motorist coverage without regard to the vehicle being occupied. Such coverage is also provided to any other person occupying the covered automobile. A named insured or family member injured while occupying a non-covered vehicle could receive underinsured motorist coverage under the family policy and under the policy of the non-covered vehicle. A non-family member injured while occupying a covered vehicle could also be covered by his own policy as well as the covered vehicle policy. The "other insurance" provisions of automobile policies represent an attempt to establish the respective obligations of the insurers in the circumstance where such multiple coverage exists.

In *Krenski v. Aubuchon*, 841 S.W.2d 721 (Mo.App.1992) we dealt with a policy which specifically provided that "Underinsured motor vehicles coverage shall be excess over all other bodily injury bonds and insurance policies applicable at the time of the accident." We held that language created an ambiguity sufficient to overcome specific limits on underinsured coverage which had been found in

*Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379 (Mo. banc 1991) not to be ambiguous. It is not unreasonable to interpret such language to mean that underinsured motorist coverage is in addition to the tortfeasor's insurance coverage.

The Supreme Court did not address "other insurance" provisions in *Rodriguez*. Either the policy did not contain such a provision, which I regard as unlikely, or the plaintiff therein did not perceive that provision to create an ambiguity and did not bring that provision to the Court's attention. Although the Court addresses the concept of "excess" insurance, it makes no specific reference to any "other insurance" provision of the policy.

In *Zemelman v. Equity Mutual Insurance Company*, 935 S.W.2d 673 (Mo.App.1996) the Western District of this court found an "other insurance" provision identical to the one before us created an ambiguity as to the extent of underinsured motorist coverage. The language of that policy as to the definition of "underinsured" and the limit of liability was identical to *Rodriguez* and the *Zemelman* court found neither of those provisions ambiguous. In reliance on *Krenski, supra* the court concluded that the "other insurance" provision could lead a reasonable policy holder to conclude that the limitations unambiguously set forth earlier did not apply.

The language found to create ambiguity in *Krenski* and the language before the court in *Zemelman* are considerably different. The language relied upon in *Zemelman* is "However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." That language clearly addresses the multiple coverage situation referred to earlier in this opinion. Reliance upon that language to create an ambiguity in the underinsured coverage requires a conclusion that the policy issued to Zemelman provided insurance for the vehicle which collided with him. Equity Mutual did not provide insurance for the tortfeasor's vehicle. No reasonable argument could be posited that another person injured in the accident not covered by the Equity Mutual underinsured motorist provisions could recover against Equity Mutual for the negligence of the tortfeasor. I am unable to conclude here that Hartford provided insurance "with respect to a vehicle" not owned by Goza and that the "other insurance" provision creates an ambiguity with respect to the underinsured motorist coverage.

Courts cannot create an ambiguity in order to distort the language of an unambiguous policy or in order to enforce a particular construction which it might feel is more appropriate. *Rodriguez, supra* [2,3,4,5]. The extensive dicta discussion at the end of the *Zemelman* opinion suggests that may have happened. That discussion is premised upon the idea that "the courts have carved a nitch which allows the insured to avoid the harsh effect of *Rodriguez* and the unambiguous definition of underinsured and limit of liability language." *Zemelman* [6]. But *Rodriguez* points out that the effect of underinsured motorist coverage is to assure the insured of receiving the contracted amount of protection, either from the tortfeasor and/or from his insurer. *Rodriguez*, ftnt. 1. There is nothing harsh about enforcing the contract between the insurer and insured that guarantees that the insured will recover from some source the amount of his damages up to the limit of underinsured coverage. There is no reason to require that he receive more than the contracted for amount. Such a guarantee of a minimum recovery is not illusory protection as *Zemelman* suggests. Underinsured motorist coverage is quite inexpensive ($10 in this case) and when the nature of the protection is understood a reasonable policyholder would not expect to recover more than the underinsured motorist damages contracted for.

The Supreme Court denied transfer in *Zemelman* which does not indicate its approval of the decision but does allow the case to stand as authority. Thereafter, the Southern District followed *Zemelman* in *Jackson v. Safeco Insurance Co. of America*, 949 S.W.2d 130 (Mo.App.1997). In *State Farm Mutual Automobile Insurance Company v. Sommers*, 954 S.W.2d 18 (Mo.App. E.D.1997) this district distinguished *Zemelman* and *Jackson* on the basis that "the 'other insurance' clause in those cases could reasonably be interpreted to provide cover-

age in excess of all other applicable coverage." I believe *Zemelman* and *Jackson* were incorrectly decided and disagree with the basis in *Sommers* upon which those cases were distinguished. But all three districts have accepted the "ambiguity" set forth in Judge Teitelman's opinion and I feel myself bound by that precedent.

I therefore concur in result.

CRAHAN, Chief Judge, dissenting.

I respectfully dissent. I concur fully in Judge Smith's analysis of *Zemelman v. Equity Mutual Insurance Company*, 935 S.W.2d 673 (Mo. App. 1997) and *Jackson v. Safeco Insurance Co.* of America, 949 S.W.2d 130 (Mo. App. 1997), in which the Southern District followed *Zemelman* without extended critical analysis. I do not agree that *State Farm Mutual Automobile Insurance Company v. Sommers*, 954 S.W.2d 18 (Mo.App. E.D. 1997) forecloses us from rejecting the reasoning of *Zemelman* and *Jackson*. Accordingly, I would reverse the judgment and transfer the cause to the Missouri Supreme Court.

As Judge Smith points out in his opinion, the alleged ambiguity identified in *Zemelman* requires a conclusion that the policy issued to Zemelman provided insurance for the vehicle which collided with him.[1] I agree with Judge Smith that underinsured motorist coverage cannot reasonably be described as insurance for the tortfeasor's vehicle. Even if it could, however, the policy language would present no ambiguity on the facts presented either in *Zemelman* or in this case. The Other Insurance clause expressly states that it applies to "any insurance we provide with respect to a vehicle you do not own." Assuming *arguendo* that underinsured motorist coverage may be deemed for certain purposes to be insurance on the tortfeasor's vehicle, it must still be an *underinsured* vehicle for the Other Insurance clause to apply. Here, as in *Zemelman*, the tortfeasor's vehicle was unquestionably *not* an underinsured vehicle. Thus the policy did not provide any insurance for it and the Other Insurance

clause is inapplicable. If the Other Insurance clause is inapplicable by its own terms, it cannot conceivably create an ambiguity.

In *Sommers*, we expressly held that the language of the excess insurance clauses in *Krenski v. Aubuchon*, 841 S.W.2d 721 (Mo. App. 1992), *Zemelman* and *Jackson*. Therefore, although the court then gratuitously observed that the "other insurance" clauses at issue in those cases could reasonably be interpreted as providing excess coverage, the issue of whether *Krenski*, *Zemelman* and *Jackson* were correctly decided was not before us in *Sommers* and the statement may properly be characterized as *dicta*. Accordingly, I disagree that *Sommers* forecloses us from rejecting the reasoning of *Zemelman* and *Jackson*.

I would reverse the judgment for the reasons expressed in Judge Smith's opinion and in this opinion and transfer the cause to the Missouri Supreme court to resolve the resulting conflict.

---

1. The *Zemelman* court put it this way, 935 S.W.2d at 677:

... the Zemelman policy expressly states "insurance we provide with respect to a vehicle you do not own is excess...." Since underinsured coverage can be reasonably interpreted as "coverage for a vehicle you do not own," the policies contain similar ambiguities...."