Nancy MELTON, Appellant,

v.

COUNTRY MUTUAL INSURANCE
COMPANY, Respondent.

No. ED 79771.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 14, 2002.

Marc P. Weinberg, Gondenhersh Law Offices, St. Louis, MO, for appellant.

David T. Butsch, Green Schaaf & Jacobson, P.C., Clayton, MO, for respondent.

PAUL J. SIMON, Judge.

Nancy Melton (appellant) appeals from the judgment of the Circuit Court of St. Louis County in favor of Country Mutual Insurance Company (Country), in which the trial court found, by way of summary judgment, that Country was not liable to appellant for underinsured motor vehicle coverage. We affirm.

The parties submitted the case to the trial court on stipulated facts. On September 13, 1998, appellant was a passenger in a motor vehicle that was owned and being operated by Rhonda Rainey (Rainey). Rainey lost control of her car due to her negligence, and the possible negligence of Jeffery Hughes (Hughes) and Thomas Perschbacher (Perschbacher). Appellant sustained serious and permanent injuries.

Under the terms and conditions of Rainey's policy of liability insurance with Allstate Insurance Company, the maximum benefits provided were $25,000.00 per person/$50,000.00 per accident and $1,000.00 in medical pay. Under the terms and conditions of Hughes' father's policy of liability insurance with Farmers Insurance Company, the maximum benefits provided were $25,000.00 per person/$50,000.00 per accident. Under the terms and conditions of Perschbacher's policy of liability insurance with USF & G Insurance, the maximum benefits provided were $300,000.00. None of the negligent or potentially negligent parties had a policy containing underinsured motorist (UIM) protection.

Appellant received, by way of settlement, the policy limits of Rainey's liability coverage, which was $25,000.00, and the policy limits of Rainey's medical pay coverage. Also, appellant received, by way of settlement, the policy limits of Hughes' father's liability coverage, which was $25,000.00. Furthermore, appellant received, by way of a judgment in interpleader, $250,000.00 of the $300,000.00 liability coverage of Perschbacher's policy. The remaining $50,000.00 of that policy was awarded to Rainey. Therefore, appellant collected a total of $300,000.00 from liability insurance policies from negligent or potentially negligent parties connected to the automobile accident. However, the damages sustained by appellant, as a direct and proximate result of the automobile accident, were in excess of $750,000.00.

At the time of the accident, appellant was insured by Country under a policy which was issued to her mother that became effective on July 1, 1998. The policy issued by Country provided UIM protection with a limit of liability of $50,000.00 per person. It is undisputed that appellant was covered under the policy, it was in effect on the date of the accident, and

appellant had met all obligations imposed under Company's policy in order to recover benefits.

The relevant terms and conditions of the policy at issue contain the following language:

**SECTION 2**

**Uninsured–Underinsured Motorists, Coverage U**

If **you** have paid for this coverage . . ., **we** will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured or underinsured motor vehicle** because of bodily injury sustained by the insured and caused by an accident. The owner's or operator's liability for these damages must arise from the ownership, maintenance or use of the **uninsured or underinsured motor vehicle**.

If **you** have Underinsured Motorists coverage . . ., a. and b. apply:

a. The limits of liability for this coverage will be reduced by the total payments of all bodily injury liability insurance policies applicable to the person or persons legally responsible for such damage.

b. **We** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

. . . . .

**Definitions, Section 2** . . .

2. **Underinsured motor vehicle** means any type of **motor vehicle** or trailer for which the sum of all liability bonds or policies at the time of an accident are less than the limit of this insurance.

. . . . .

**Conditions, Section 2** . . .

2. **Limits of Liability.** The Uninsured—Underinsured Motorists limits of

liability shown on the declarations page apply as follows: ...

 c. Amounts payable for damages under Uninsured–Underinsured Motorists Coverage U, will be reduced by:

 (1) all sums paid by or on behalf of persons or organizations who may be legally responsible for the bodily injury. This includes all amounts paid under the liability coverage of this policy; ...

4. **Other Insurance.** If there is other applicable uninsured—underinsured motorists insurance that covers a loss, we will pay our proportionate share of that loss. **Our** share is the proportion **our** limits of liability bear to the total of all applicable limits. However, in the case of **motor vehicles you** do not own, this policy will be excess and will apply only in the amount **our** limit of liability exceeds the sum of the applicable limits of liability of all other applicable insurance. **We** will pay only after all other applicable limits have been paid.

On October 21, 1999, appellant made a demand for UIM benefits from Country. Country refused payment of UIM benefits. Appellant brought suit against Country to compel payment of the $50,000.00 of UIM coverage under the policy. Both parties filed motions for summary judgment based upon the stipulated facts. On May 21, 2001, the trial court issued a judgment in favor of Country. The trial court found, after considering the language of the entire policy, that the "other insurance" clause of the uninsured motorist-underinsured motorist portion of the policy was not ambiguous and that appellant had received "at least $300,000.00 from other applicable insurance." Appellant appeals.

■ When a case is tried on stipulated facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *State Farm Mut. Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18, 19 (Mo.App. E.D. 1997). When considering appeals from summary judgments, this court reviews the record in the light most favorable to the party against whom judgment was entered. *Buck v. American Family Mut. Ins. Co.*, 921 S.W.2d 96, 98 (Mo.App. E.D. 1996). This court's review of summary judgment is essentially de novo. *Id.*

■ Appellant's first point on appeal contends the trial court erred in granting summary judgment in favor of Country because the language contained in her policy is ambiguous and can be reasonably interpreted as providing UIM coverage in addition to the other liability payments she received from the other parties. Specifically, appellant argues the "other insurance" clause is ambiguous both, by itself, and when read in conjunction with the "offset" of liability provisions in the policy.

■ The language in an insurance contract should given its plain meaning. *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 830 (Mo.App. E.D.1998). An insurance policy will be held ambiguous if there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* If there is no ambiguity found, an insurance policy will be enforced according to its terms. *Id.* If a conflict arises between a technical definition within a contract, and the meaning which would reasonably be understood by the average lay person, a lay person's definition will be applied unless it plainly appears that the technical meaning is intended. *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382 (Mo.banc 1991). Courts may not create an ambiguity to distort the language of a policy which is unambiguous. *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 316 (Mo.

App. E.D.1999). "A court may not use its inventive powers to create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage." *Lang,* 970 S.W.2d at 830 (citing *Rodriguez,* 808 S.W.2d at 382).

In *Rodriguez,* our Supreme Court found that the language of the insurance policy in that case clearly stated that an underinsured motor vehicle is one whose limits for bodily injury liability are "less than the limit of liability for this coverage," and that the other party's vehicle was not underinsured because the policy limits on that vehicle were equal to the underinsured limits on Rodriguez's vehicle. *Rodriguez,* 808 S.W.2d at 382.

Also, in *Rodriguez* the Court found the language of the policy concerning the limit of liability to be unambiguous. *Id.* at 383. Under the type of policy in *Rodriguez,* if the other motorist pays as much or more to the insured for bodily injury as the insured has underinsured coverage, then the insured is not permitted to recover under the underinsured coverage. *Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 676 (Mo.App. W.D.1996). Our courts have followed *Rodriguez* in finding similar underinsured definitions and clauses limiting or "setting-off" liability to be unambiguous. *See e.g., Zemelman,* 935 S.W.2d at 676–77; *Goza v. Hartford Underwriters Ins. Co.,* 972 S.W.2d 371, 373 (Mo.App. E.D.1998).

Here, "underinsured motor vehicle" is defined under the uninsured-underinsured motorist section of the policy as "any type of motor vehicle ... for which the *sum of all liability ... policies* at the time of the accident are less than the limit of this insurance" (emphasis added). The sum of the liability policies of Rainey, Hughes' father, and Perschbacher totaled $350,000.00. Appellant had UIM coverage in the amount of $50,000.00 per person. The liability limits of the coverage on the negligent or allegedly negligent parties' vehicles were greater than the $50,000.00 liability limit for UIM coverage in Country's policy. We find the language in appellant's policy to be similar to the language in the policy in *Rodriguez.* Therefore, since *Rodriguez* is controlling we find the policy terms in appellant's policy regarding the definition of "underinsured motor vehicle" and the "offset" of liability provisions to be unambiguous.

■ However, here, appellant, as did the insured parties in *Goza* and *Zemelman,* raises an additional alleged ambiguity which is not addressed in *Rodriguez. Goza,* 972 S.W.2d at 373; *Zemelman,* 935 S.W.2d at 677. Appellant asserts that an ambiguity arises in the "other insurance" or "excess" clause of Country's policy. Appellant argues the "other insurance" clause could be read to provide coverage over and above the amount she has already collected from Rainey, Hughes' father, and Perschbacher. Appellant relies on *Goza* and *Zemelman* to support her argument.

The "other insurance" clauses found to be ambiguous in *Goza* and *Zemelman* provided:

> [I]f there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance. *Goza,* 972 S.W.2d at 373; *Zemelman,* 935 S.W.2d at 675.

The other insurance clause in the UIM section of Country's policy provides:

If there is other applicable uninsured-underinsured motorists insurance that covers a loss, we will pay our proportionate share of that loss. **Our** share is the proportion **our** limits of liability bear to the total of all applicable limits. However, in the case of **motor vehicles you** do not own, this policy will be excess and *will apply only in the amount our limit of liability exceeds the sum of the applicable limits of liability of all other applicable insurance.* **We** will pay only after all other applicable limits have been paid. (bold in original, italics added).

We find that the additional language contained in the "other insurance" clause in appellant's policy distinguishes the clause from those found to be ambiguous in *Goza* and *Zemelman.* The "other insurance" clause, by itself, and when read in conjunction with the entire policy is unambiguous because it limits excess payment to the situation where the limits of liability of all other applicable insurance are less than the limits of liability for the UIM coverage issued to appellant. *See Sommers,* 954 S.W.2d 18, 20 (Mo.App. E.D. 1997). The applicable insurance of Rainey, Hughes' father, and Perschbacher totaled $350,000.00. Appellant had UIM coverage in the amount of $50,000.00 per person. Therefore, appellant's policy would be excess only if the other insurance applied did not exceed $50,000.00. Since the other insurance applied exceeded the amount of appellant's UIM coverage, she is not eligible for excess UIM coverage.

 Appellant's second point on appeal contends that the trial court erred in granting summary judgment in favor of Country because section 379.204, RSMo 2000 (hereafter all statutory references are to RSMo 2000), mandates that Country provide $50,000.00 of excess liability coverage.

 Article I, Section 13 of the Missouri Constitution states: "[t]hat no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, . . . can be enacted." *Mo. Const. Art. 1, Sec. 13.* Retrospective laws are generally defined as laws that create a new obligation or impose a new duty with respect to transactions or considerations already past. *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 340 (Mo.banc 1993). Under the rules of statutory construction, statutory provisions that are substantive are presumed to operate prospectively, unless the legislative intent that they operate retroactively clearly appears from the express language of the act or by necessary or unavoidable implication. *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 872 (Mo.banc 1993).

Section 379.204 provides:

Any underinsured motor vehicle coverage with limits of liability less than two times the limits for bodily injury or death . . . shall be construed to provide coverage in excess of the liability coverage of any underinsured motor vehicle involved in the accident.

Section 379.204 did not become effective until August 28, 1999. Appellant's policy became effective July 1, 1998. Appellant's accident took place on September 13, 1998. Section 379.204 imposes a new duty or obligation on insurers in that it forces them "to provide coverage in excess of the liability coverage of any underinsured motor vehicle. . . ." It does not clearly appear from the express language of section 379.204 that the legislature intended the statute to operate retroactively. Nor do we find that by necessary or unavoidable implication the statute operates retroactively. Therefore, section 379.204, due to its ineffectiveness at the times relevant to appellant's accident, cannot be used to im-

pose a new duty or obligation on Country with respect to appellant's coverage under the policy.

 Appellant's third point on appeal contends Country's UIM coverage limits set forth on the declaration page are illusory because the terms of the policy make it impossible to ever obtain the maximum coverage of $50,000.00.

 In *Rodriguez*, our Supreme Court stated that the effect of UIM coverage is to assure the insured receives the contracted amount of protection. *Rodriguez*, 808 S.W.2d at 382 n. 1. UIM coverage is optional coverage. *Lang* 970 S.W.2d at 832. In Missouri, there is no statutory nor public policy requirement for UIM coverage. *Id.; Green v. Federated Mut. Ins. Co.*, 13 S.W.3d 647, 650 (Mo.App. E.D. 1999). Absent a statute or public policy requiring coverage, a court will not use its inventive powers to rewrite a policy to provide coverage for which the parties never contracted. *Lang*, 970 S.W.2d at 830.

We have found that the language of the policy issued to appellant by Country is unambiguous. Appellant has received $300,000.00 from the other parties' insurers. This is greater than her contracted amount of $50,000.00 of UIM coverage in the policy issue to her by Country. Pursuant to our Supreme Court's interpretation of UIM coverage, appellant was assured she would receive the contracted amount of protection. A guarantee by Country of a minimum recovery is not an illusory protection, nor is it harsh to enforce a contract between an insurer and insured that guarantees insured will recover, from some source, the amount of insured's damage up to the limit of UIM coverage. *See Goza*, 972 S.W.2d at 376 (Smith, S.J., con-

curring). Therefore, we deny appellant's point.

Judgment affirmed.

JAMES R. DOWD, C.J., and LAWRENCE E. MOONEY, J., concur.