HARTFORD UNDERWRITERS INSURANCE COMPANY, Respondent,

v.

Donna LEDBETTER, Appellant.

No. SD 30896.

Missouri Court of Appeals, Southern District, Division One.

May 24, 2011.

Motion for Rehearing or Transfer Denied June 15, 2011.

Robert M. Ramshur, Piedmont, MO, for Appellant.

Scott C. Harper and Aaron I. Mandel, Brinker & Doyen, L.L.P., Clayton, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

This appeal arises out of cross-petitions for declaratory judgment filed by Appellant Donna Ledbetter ("Insured") and Respondent Hartford Underwriters Insurance Company ("Hartford") followed by cross-motions for summary judgment relating to whether Insured was entitled to underinsured motorist ("UIM") coverage

under the terms of her automobile policy with Hartford which covered a total of four vehicles.

The genesis of this litigation arose from a vehicular accident wherein Insured was injured when her 1990 Ford Bronco II was struck by a 1998 Dodge Ram SST operated by Danny Harris ("Mr. Harris"). Insured was operating in the course and scope of her employment with the United States Postal Service at the time of the accident. Insured brought suit against Mr. Harris for the personal injuries she suffered in the accident. Mr. Harris was covered by a Cornerstone National Insurance liability policy with limits of $50,000.00 for injuries sustained by one person in a motor vehicle accident. This suit was settled against Mr. Harris in exchange for the policy limits of $50,000.00 and a release of liability from Insured and dismissal of the lawsuit. Additionally, Insured received certain Workers' Compensation benefits from the United States Department of Labor as the result of the accident.

At the time of the accident, Insured had an insurance policy ("the Policy") with Hartford. Insured claimed entitlement to UIM coverage under the terms of the Policy, which provided $50,000.00 UIM coverage on each of her four covered vehicles totaling $200,000.00. Hartford maintained that its policy provided UIM coverage only with stated limits of $50,000.00 per person and $100,000.00 per accident. In its petition against Insured, Hartford noted that Insured "has claimed that the vehicle operated by Mr. Harris is an [UIM] vehicle under the terms of the ... Policy and has further claimed a right to stack the [UIM]

coverage available for the four vehicles covered under the ... [P]olicy." Hartford denied "that the vehicle operated by Mr. Harris is an [UIM] vehicle under the terms of the ... [P]olicy and, further denie[d] a right to stack the [UIM] coverages." Despite Insured's argument to the contrary, Hartford insisted that even if the Policy provided UIM coverage, Hartford would be "entitled to a reduction of the amount due for any amounts paid or due to payment for worker's compensation."

Insured filed her "Answer and Counterclaim" in which she brought one count for declaratory judgment and one count for $200,000.00 in damages for her injuries from the accident. Hartford then filed its "Motion for Summary Judgment" on April 20, 2010, and on May 14, 2010, Insured filed her own motion for summary judgment which was apparently limited to Count I of her counterclaim.[1]

On September 29, 2010, the trial court entered its Judgment in which it found, *inter alia*, that "the vehicle operated by Mr. Harris ... fails to meet the ... [P]olicy's definition of [an UIM] vehicle;" that "there is no right to recovery of [UIM] coverage in this matter;" and that there was "no right to stack the [UIM] coverage provided by the [Policy]." The trial court then entered judgment "in favor of [Hartford] and against [Insured]." This appeal followed.

In pertinent part the Policy set out:

**SECTION II—UNDERINSURED MOTORISTS COVERAGE**

. . . .

---

1. A copy of this motion was not included in the record on this appeal. In any event, Insured conceded at oral arguments that she was not pursuing her point relied on which posited trial court error in its denial of her motion for summary judgment. Thus, we

consider only Insured's remaining point relied on, being Point One, and we shall omit any further references to Insured's complaints relating to the denial of her motion for summary judgment.

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**....

....

C. '**Underinsured motor vehicle**' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

....

## EXCLUSIONS

....

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   1. Workers' compensation law....

....

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for [UIM] is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for [UIM] is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident

....

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law....

....

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this Part:

1. Any recovery for damages under all policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. *Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.*

(Emphasis added.)

■ In part pertinent to our review, Insured's first point relied on asserts the trial court erred in granting Hartford's motion for summary judgment. Insured asserts that the language of the Policy's **"OTHER INSURANCE"** clause pertaining to UIM coverage "was ambiguous which ambiguity is to be resolved in favor of coverage...." Specifically she makes the following reviewable argument:

[t]he 'Other Insurance' clause is ambiguous in that it provided 'any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis' which requires construction that the [UIM] coverage was excess to the tortfeasor liability coverage [here $50,000.00] regardless as to

whether [Insured] was occupying a non-owned vehicle since occupancy of the non-owned vehicle was not contained in the [P]olicy, that the 'excess' language prevails [over] the conflicting language contained in the [P]olicy definition of underinsured and 'Limits of Liability' sections, which would allow stacking of the underinsured coverage on each vehicle.[2]

In response to Insured's assertions, citing *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991), Hartford maintains Mr. Harris was not an UIM as defined in the Policy because Mr. Harris had liability limits of $50,000.00, which it paid; that the Policy defined an UIM vehicle as one with liability limits less than the limits of its policy; and, since the limits of the Policy were the same as those in Mr. Harris's policy, Mr. Harris could not have been considered as being "underinsured."[3] Hartford also sets out that *Ritchie v. Allied Prop. and Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. banc 2009), does not assist Insured because in *Ritchie* the claimant was a passenger in a non-owned vehicle, whereas Insured was not occupying a non-owned vehicle when the accident took place.[4]

2. Insured also maintains the **"OTHER INSURANCE"** clause is ambiguous in that the language "creates two different ways to calculate the UIM coverage...." She maintains "this uncertainty renders the [P]olicy ambiguous, the [P]olicy is construed against the insurer, so that the proportionate share language overrides the anti-stacking language, requiring stacking so as to provide a total of $200,000.00 UIM coverage."

However, the full extent of Insured's damages has not been set out in the record below such that it is necessary to remand this matter for further proceedings. What also remains to be determined includes the extent of Insured's entitlement under the Policy's **"EXCLUSIONS"** provision for any monies she may have received under the "Workers' compensation law ..." which is a predicate to our review of Hartford's claim for an "offset for amounts paid or payable for workers compensation coverage." As such, this particular issue is not ripe for our determination. " 'A ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character.' " *Missouri Alliance for Retired Americans v. Dept. of Labor and Indus. Relations*, 277 S.W.3d 670, 677 (Mo. banc 2009) (quoting *Missouri Health Care Assoc. v. Attorney General of the State of Missouri*, 953 S.W.2d 617, 621 (Mo. banc 1997)). Accordingly, a determination on this issue is not within the purview of our review at this juncture.

Likewise, we do not reach the issue of stacking because we have necessarily limited our review to whether or not the trial court erred in determining that Insured was not entitled to any UIM coverage under the terms of the Policy.

3. Hartford also cites generally to *Farm Bureau Town & Country Ins. Co. v. Barker*, 150 S.W.3d 103 (Mo.App.2004), for support, observing that in a similar policy as the one under review, the *Barker* court approved of a provision in the policy limiting "the recovery to the highest applicable limit of liability available under any one policy."

4. Insured cites *Ritchie* in support of her argument. In *Ritchie*, 307 S.W.3d at 134, Kelsey Ritchie ("Kelsey") was killed when the vehicle in which she was a passenger was hit by another vehicle. Kelsey was insured under a personal automobile policy her parents had purchased from Allied Property & Cas. Ins. Co. ("Allied"). *Id.* The Allied policy insured three vehicles owned by Kelsey's parents, each with limits of $100,000.00 per person and $300,000.00 per accident. *Id.* It was undisputed that the drivers of the two vehicles involved in the accident were underinsured. *Id.* Kelsey's parents sought recovery from Allied under their UIM coverage, asserting entitlement "to the full $100,000[.00] per person underinsured coverage for each vehicle, for a total of $300,000.[00]." *Id.* "Allied countered that its [UIM] policies could not be stacked, thereby permitting only a single recovery of up to $100,000.[00]." *Ritchie*, 307 S.W.3d at

Appellate review of a grant of summary judgment is *de novo*. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment "is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). A genuine issue means that the issue is a "real and substantial one ... consisting not merely of conjecture, theory and possibilities." *ITT Comm'l*, 854 S.W.2d at 378. A genuine issue "exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* "When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court.'" *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 106 (Mo.App.2009) (quoting *Fed. Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164 (Mo. App.2005)).

" 'Whether an insurance policy is ambiguous is a question of law.' " *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007) (quoting *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999)). "A policy is ambiguous if 'there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.' " *Merlyn Vandervort Investments, LLC v. Essex Ins. Co., Inc.*, 309 S.W.3d 333, 336 (Mo. App.2010) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). " '[I]f a contract promises something at one point and takes it away at another, there is an ambiguity.' " *Seeck*, 212 S.W.3d at 133 (quoting *Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870, 875 (Mo. banc 1985)). "Language in an insurance policy is ambiguous if it is reasonably open to different constructions, and the language used will be viewed in the light of the meaning that would ordinarily be understood by a layman who bought and paid for the policy." *Hobbs v. Farm Bureau Town & Country Ins. Co.*, 965 S.W.2d 194, 197–98 (Mo.App.1998). "If the policy is unambiguous, the policy will be enforced according to its terms." *Merlyn*, 309 S.W.3d at 336. "If the [policy] is ambiguous, it will be construed against the insurer." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). As previously set out, here the sole issue for our consideration is whether or not the trial court erred when it determined Insured was not entitled to UIM coverage under the terms of the Policy.[5]

---

134. Allied further argued "that 'the maximum per-person recovery under the [UIM] coverage policy of $100,000[.00]' was not just the most it would pay, but was also the most that [Kelsey's parents] were entitled to recover in total from all sources" such that Allied "was entitled to a set-off of the $60,000[.00] that [Kelsey's parents] already had recovered from the tortfeasors' insurers." *Id.* at 134–35. Our high court determined that while a provision in the Allied policy set out that any recovery for damages could equal but not exceed the highest applicable limit for any one vehicle, it also stated under the terms of the Allied policy that any coverage provided with respect to a non-owned vehicle *would be excess over any other collectible UIM coverage. Id.* at 137–39 (emphasis added). Additionally, it found that to the extent that other policy provisions could be read in isolation to prohibit stacking, they at best created an ambiguity that had to be resolved in favor of coverage. *Id.* at 137. Accordingly, "each of the [UIM] coverages [were] excess to the other, and, therefore, may be stacked." *Id.* at 138.

5. We note Hartford conceded during oral argument that Insured's damages for bodily injuries exceeded by at least $1.00 the coverage provided by Mr. Harris's liability policy.

■ The Policy under consideration provides under paragraph A of the "LIMIT OF LIABILITY" provision found in "SECTION II–UNDERINSURED MOTORISTS COVERAGE" that

[t]he limit of liability shown in the Declarations for each person for [UIM] is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for [UIM] is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

■ It is undisputed that Insured received $50,000.00 from Mr. Harris in settlement of her claim against him. Viewed in isolation, the foregoing provision would appear to preclude Insured from being entitled UIM coverage under her Policy. However, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie*, 307 S.W.3d at 135.

We, again, observe that there is language which sets out under the **"OTHER INSURANCE"** provision of the Policy that "[a]ny insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis." We also observe that in *Goza v. Hartford Underwriters Ins. Co.*, 972 S.W.2d 371, 372 (Mo.App.1998), the insured ("Goza")

sustained injuries in an accident when the vehicle *she was operating* collided head-on with a vehicle operated by Scott Sylcox ["Sylcox"] when his vehicle entered her lane of traffic. Sylcox had coverage under a liability policy issued by his automobile insurer with limits of $100,000[.00] per person and $300,000[.00] per occurrence. Goza had coverage under a policy issued by Hartford with limits of $100,000.00 per person and $300,000.00 per accident. Goza's damages from the accident exceeded $200,000[.00] [and she] brought an action against Sylcox and Hartford for damages resulting from the collision. She settled with Sylcox for his policy limits of $100,000[.00,] [but] Hartford denied payment ... under the UIM provisions of its policy.

(Emphasis added.) The issue then became whether Goza was entitled to coverage for her damages under the UIM provision of her policy with Hartford. *Goza*, 972 S.W.2d at 371. Following a bench trial on stipulated facts, the trial court held that the "OTHER INSURANCE" clause of Goza's policy created an ambiguity in the UIM provisions which required those provisions to be construed in favor of coverage for Goza. *Id.* at 373–74. On appeal, the reviewing court affirmed the trial court's ruling. *Id.* at 375.

The Hartford policy in *Goza* provided essentially the same definition of an " 'Underinsured motor vehicle' " in paragraph "C" of its UIM provision as the provision found in Insured's policy. Likewise, the *Goza* policy and Insured's policy contained similar language in its paragraph "A" of the " 'LIMIT OF LIABILITY' " provision which set out that " '[t]he limit of liability shown in the Declarations for each person for [UIM] Coverage is our maximum limit of liability for all damages arising out of bodily injury sustained by any one person in any one accident.' " *Id.* at 373. Additionally, under its " 'OTHER INSURANCE' " provision the Hartford policy in *Goza* set out that

'[i]f there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However,*

*any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.'*

*Id.* (emphasis added). The reviewing court in *Goza* cited to *Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 677 (Mo. App.1996), for the proposition that "since [UIM] coverage can reasonably be interpreted as providing 'coverage for a vehicle that you do not own,' the above-noted language could reasonably be interpreted as providing underinsured coverage which is in excess to amounts recovered from the tortfeasor." [6] *Goza,* 972 S.W.2d at 373–74. The reviewing appellate court then found this gave rise to an ambiguity that had to be resolved in favor of the insured such that it found there was UIM coverage, despite the fact that Goza was driving her own insured vehicle, as was the driver in *Zemelman,* at the time of her accident. *Id.* at 375.

Here, as in *Goza,* "an objective examination of the 'excess' language of the Other Insurance clause suggests not just that this language might reasonably be interpreted by an average lay person to mean underinsured coverage was excess to amounts recovered from the tortfeasor . . . ," it also could be interpreted "to mean that this language prevailed over the preceding and apparently conflicting language contained in the [P]olicy's definition of underinsured and Limits of Liability sections." *Id.* This created an ambiguity which must be resolved in favor of Insured and in favor of UIM coverage under the

terms of the Policy. *Id.* Hence, here, the trial court erred in granting summary judgment in favor of Hartford by determining that Insured had no right to recover UIM coverage under the Policy. Insured's Point One has merit.

The trial court's grant of summary judgment is reversed and remanded for further proceedings consistent with this opinion.

LYNCH and BURRELL, JJ., concurs.

---

6. The *Zemelman* court observed that "[i]n essence, the courts have carved a nitch which allows the insured to avoid the harsh effect of *Rodriguez* and the unambiguous definition of underinsured and limit of liability language." *Id.* at 677. Accordingly,

[w]here there is an 'excess' or 'other insurance' clause that provides the underinsured coverage is excess over all other collectible

insurance at the time of the accident, a court may find that language is ambiguous when read with the limit of liability or the definition of underinsured motorist coverage if the other insurance clause may reasonably be understood to provide coverage over and above that collected from the tortfeasor. *Id.* at 677–78.