Rule 23 order filed
October 4, 2016;
Motion to publish granted
November 21, 2016

2016 IL App (5th) 150083

NO. 5-15-0083

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| APRYL SHERROD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-MR-411 |
| | ) | |
| ESURANCE INSURANCE SERVICES, INC., | ) | Honorable |
| | ) | Richard A. Aguirre, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justice Welch concurred in the judgment and opinion.
Justice Goldenhersh dissented, with opinion.

**OPINION**

¶ 1    The defendant, Esurance Insurance Services, Inc. (Esurance), appeals from an order of the circuit court of St. Clair County entering summary judgment in favor of the plaintiff, Apryl Sherrod, after the parties filed cross-motions for summary judgment. The trial court determined that the plaintiff and the estate of the plaintiff's deceased daughter were entitled to the underinsured motorist limits under the plaintiff's Esurance policy in excess to the bodily injury liability limits the plaintiff and the estate of the plaintiff's deceased daughter recovered under the at-fault driver's separate automobile insurance

1

policy, despite the fact that the at-fault driver's bodily injury liability limits exceeded the plaintiff's underinsured motorist coverage limits. Specifically, the trial court found an ambiguity in the Esurance policy's "Other Insurance" clause, which it held must be construed in favor of coverage. We reverse and remand.

¶ 2                                    BACKGROUND

¶ 3     On April 15, 2011, the plaintiff and her daughter, Amari Clark, were involved in an automobile accident after their vehicle was struck by a drunk driver, Andrew Fraticelli. Amari Clark died as a result of the accident, and the plaintiff herself sustained severe injuries. At the time of the accident, Fraticelli was covered under an insurance policy with liability limits of $100,000 per person and $300,000 per occurrence. Pursuant to this policy, Fraticelli's insurance company paid $100,000 to the plaintiff and $100,000 to the estate of Amari Clark.

¶ 4     Also at the time of the accident, the plaintiff was covered under a personal automobile policy issued by Esurance with underinsured motorist liability limits of $50,000 per person and $100,000 per occurrence. The relevant provisions of plaintiff's Esurance policy are as follows:

"PART III: UNINSURED AND UNDERINSURED MOTORIST COVERAGE

* * *

INSURING AGREEMENT: UNDERINSURED MOTORIST BODILY INJURY COVERAGE

In return for payment of the premium for this coverage when due, and subject to the limits of liability, 'we' agree with 'you' as follows:

2

1. 'We' will pay compensatory damages that an 'insured' is legally entitled to recover from the 'owner' or operator of an 'underinsured motor vehicle' because of 'bodily injury':

   A. Sustained by an 'insured'; and

   B. Caused by an 'accident'.

The liability of that 'owner' or operator for these damages must arise out of the ownership, maintenance, or use of the 'underinsured motor vehicle'. Any judgment for damages arising out of a lawsuit brought without 'our' written consent is not binding on 'us'.

* * *

ADDITIONAL DEFINITIONS FOR PART III: UNINSURED AND UNDERINSURED MOTORIST COVERAGE

* * *

'Underinsured motor vehicle' means a land motor vehicle of any type to which a bodily injury liability bond, policy or other security required to be maintained under Illinois law applies at the time of the 'accident' but the sum of the limits of liability for 'bodily injury' under that bond, policy or other security to an 'insured' is less than the Underinsured Motorist Bodily Injury Coverage limit of liability under this policy."

3

¶ 5   There is also a "Limit of Liability" section provided under the uninsured and underinsured motorist coverage portion of plaintiff's policy.  This section states in relevant part:

"LIMIT OF LIABILITY

1. The limit of liability shown in the Declarations page for each person for Uninsured Motorist Coverage or Underinsured Motorist Coverage is 'our' maximum limit of liability for all damages, including, but not limited to, damages for:

A. Loss of society;

B. Loss of companionship;

C. Loss of services;

D. Loss of consortium; or

E. Wrongful death;

arising out of 'bodily injury' sustained in any one 'accident'.  Subject to this limit for each person, the limit of liability shown on the Declarations page for each accident for Uninsured/Underinsured Motorist Coverage is 'our' maximum limit of liability for all damages for 'bodily injury' resulting from any one 'accident'.  The limit of liability shown in the Declarations page for 'property damage' is 'our' maximum limit of liability for all damages for 'property damage' resulting from any one 'accident'.

This is the most 'we' will pay regardless of the number of:

4

A. 'Insureds';

B. Claims made;

C. Vehicles or premiums shown in the Declarations page; or

D. Vehicles involved in the 'accident'.

There will be no stacking or combining of coverage afforded to more than one 'auto' under this policy. If more than one policy of uninsured or underinsured motorist coverage applies to an 'accident', the maximum the 'insured' may recover from all of the applicable coverage is the highest limit available under one policy for one 'auto'.

2. No one will be entitled to receive duplicate payments for the same elements of damages under this coverage and:

A. Part I: Liability Coverage;

B. Part II Medical and Funeral Services Payments Coverage of this policy; or

C. Any other source.

3. 'We' will not make a duplicate payment under this coverage for any element of damages for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

\* \* \*

5. The limit of liability shown in the Declarations page for 'bodily injury' under Part III shall be reduced by all sums:

5

A. Paid because of 'bodily injury' by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I;

* * *

7. The maximum amount payable pursuant to any underinsured motor vehicle insurance settlement agreement shall not exceed the amount by which the limits of the underinsured motorist coverage exceed the limits of the 'bodily injury' liability insurance of the 'owner' or operator of the 'underinsured motor vehicle'."

¶ 6    In addition to the "Limit of Liability" section above, the policy further includes an "Other Insurance" clause.  Specifically, the "Other Insurance" clause states in relevant part:

"OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the Uninsured Motorist Coverage or Underinsured Motorist Coverage provided in this section, 'we' will only pay 'our' share of the damages.  'Our' share is the proportion that 'our' limit of liability provided in this Part III bears to the total of all applicable limits on either a primary or excess basis.  However:

1. Any recovery for damages under all policies or provisions of coverage may equal, but not exceed, the highest applicable limit for any one vehicle under any one insurance policy providing coverage on either a primary or excess basis.

6

2. Any insurance 'we' provide with respect to a vehicle 'you' do not 'own', including any temporary substitute, shall be excess over any collectible insurance providing such coverage on a primary basis."

¶ 7　After the plaintiff agreed to settle with Fraticelli's insurance company for the limits under Fraticelli's policy, the plaintiff submitted a claim to Esurance seeking to recover $50,000 for her personal damages and $50,000 for the estate of Amari Clark. Esurance denied the plaintiff's claim. Esurance advised the plaintiff that pursuant to the terms of her policy, underinsured motorist coverage was not available because the amount the plaintiff and the estate of Amari Clark each received under Fraticelli's policy ($100,000) exceeded the plaintiff's own policy coverage limits ($50,000).

¶ 8　The plaintiff subsequently filed a petition for declaratory judgment, seeking a determination of the amount of underinsured motorist coverage she was entitled to under her Esurance policy. The plaintiff and Esurance then filed cross-motions for summary judgment. The trial court returned a judgment in favor of the plaintiff and against Esurance after finding an ambiguity in the policy's "Other Insurance" clause. Because Illinois law requires ambiguities in insurance policies to be construed in favor of the insured, the trial court determined that the plaintiff and the estate of Amari Clark were each entitled to $50,000 under the plaintiff's Esurance policy in addition to the $100,000 each recovered under Fraticelli's policy. After the trial court denied Esurance's motion for reconsideration, Esurance timely filed its notice of appeal.

7

¶ 9                                    ANALYSIS

¶ 10    This appeal is taken from the trial court's grant of a summary judgment in favor of the plaintiff and against Esurance.  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).  When parties file cross-motions for summary judgment, they agree that only a question of law is involved and the court should decide the issue based on the record.  *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).  A trial court's entry of a summary judgment is subject to *de novo* review, and the construction of an insurance policy, which presents a question of law, is similarly reviewed *de novo*.  *Valley Forge Insurance Co.*, 223 Ill. 2d at 360.

¶ 11    An insurance policy is a contract, and the general rules governing the interpretation of contracts also govern the interpretation of insurance policies.  *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).  Accordingly, when a court construes an insurance policy, the agreement is to be enforced as written provided that it is unambiguous and only to the extent it does not contravene public policy.  *Johnson v. Davis*, 377 Ill. App. 3d 602, 606-07 (2007).  Any ambiguity in the policy must be construed in favor of the insured.  *Id.* at 607.

¶ 12    When determining whether an ambiguity exists, the court must read the provisions of an insurance contract together and not in isolation.  *Id.*  Policy provisions are considered ambiguous if they are subject to more than one reasonable interpretation.  *Id.*  Reasonableness is essential, and the key is whether the provision is subject to more than

one reasonable interpretation, not whether creative possibilities may be suggested. *Id.* As such, we will not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17.

¶ 13 In the instant case, the issue for our consideration is whether the trial court erred when it determined that the plaintiff and the estate of Amari Clark were entitled to the underinsured motorist limits under the plaintiff's Esurance policy, in addition to the amount recovered under Fraticelli's policy, where the amount recovered under Fraticelli's policy exceeded the plaintiff's own policy limits. The trial court found that when all the provisions of the plaintiff's policy were considered, there existed an ambiguity in the "Other Insurance" clause that must be construed in favor of coverage for the plaintiff and the estate of Amari Clark and against Esurance.

¶ 14 On appeal, Esurance argues that the statutory and policy definitions of an "underinsured motor vehicle" demonstrate that Fraticelli's vehicle was not an underinsured vehicle, and therefore, underinsured motorist coverage was not triggered under the plaintiff's policy.

¶ 15 The burden is on the insured to prove that its claim falls within the coverage of an insurance policy. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453-54 (2009). Once the insured has demonstrated coverage, the burden shifts to the insurer to prove that a limitation or exclusion applies. *Id.* The issue of ambiguity regarding the extent of underinsured motorist coverage, as opposed to the existence of underinsured motorist coverage, only arises when the existence of coverage is established. See *Hobbs*, 214 Ill.

9

2d at 23; see also *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 187 (1993) (issue of whether coverages can be stacked arises only because it is a given that coverage exists under the policies).

¶ 16    In the present case, the underinsured motorist coverage portion of the policy provides that Esurance will pay compensatory damages that an insured "is legally entitled to recover from the 'owner' or operator of an 'underinsured motor vehicle' because of 'bodily injury' " sustained by the insured and caused by the accident.   The Illinois Insurance Code defines an underinsured motor vehicle as follows:

> "For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident.  The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 2008).

¶ 17    Section 143a-2(4) of the Insurance Code clearly reveals the General Assembly's intent to limit underinsured motorist carriers from having to provide benefits where the

limits of the bodily injury liability insurance applicable to an at-fault driver's vehicle exceed the limits of the relevant underinsured motorist coverage. 215 ILCS 5/143a-2(4) (West 2008); *Thurman v. Grinnell Mutual Reinsurance Co.*, 327 Ill. App. 3d 920, 927-28 (2002) (statute mandated no amount payable by underinsured motorist insurer because coverage limits of underinsured motorist policy were less than the liability limits of the at-fault driver's policy); see also *Roberts v. Northland Insurance Co.*, 185 Ill. 2d 262, 269 (1998) (General Assembly intended that underinsured motorist coverage place insured in same position he would have occupied if injured by a tortfeasor who carried liability insurance in the same amount as the insured).

¶ 18    Consistent with the statutory definition above, the policy at issue defines an underinsured motor vehicle as follows:

> " 'Underinsured motor vehicle' means a land motor vehicle of any type to which a bodily injury liability bond, policy or other security required to be maintained under Illinois law applies at the time of the 'accident' but the sum of the limits of liability for 'bodily injury' under that bond, policy or other security to an 'insured' is less than the Underinsured Motorist Bodily Injury Coverage limit of liability under this policy."

¶ 19    Notably, the plaintiff concedes that the definition of an underinsured motor vehicle is not ambiguous. Thus, the contract between Esurance and the plaintiff clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the Underinsured Motorist Bodily Injury Coverage limit of liability under this policy." Since Fraticelli's coverage was not less than the limit of liability under the

plaintiff's policy, Fraticelli's vehicle did not constitute an "underinsured motor vehicle" under either the plaintiff's policy or the Illinois Insurance Code, and there is no basis for underinsured motorist coverage.

¶ 20    Moreover, a plain reading of the "Limit of Liability" section of the policy is also consistent with the statutory language of the Insurance Code and further supports the conclusion that Esurance is not obligated to pay underinsured motorist coverage to its insured.  See *Thurman*, 327 Ill. App. 3d at 929 (section 143a-2(4) makes it "clear that where the *limits* of the underinsured-motorist coverage do not exceed the *limits* of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle, there is no amount payable by the underinsured-motorist-coverage carrier" (emphasis in original)).  In the "Limit of Liability" portion of the plaintiff's insurance policy, the contract provides that "[t]he limit of liability shown in the Declarations page for 'bodily injury' under Part III shall be reduced by all sums *** [p]aid because of 'bodily injury' by or on behalf of any persons *** that may be legally responsible."

¶ 21    The effect of this provision is to set off the $100,000 paid by Fraticelli's insurer against the $50,000 coverage provided by the defendant.  The underinsured motorist coverage, therefore, is not excess coverage as the plaintiff argues.  Instead, that coverage provides a total amount of protection to be paid to the plaintiff if other persons legally responsible for the plaintiff and her daughter's injuries have less liability limits than those provided under the plaintiff's underinsured motorist coverage.  Indeed, the plaintiff concedes that Esurance's policy's setoff provisions are also unambiguous and clearly limit Esurance's coverage.  Thus, this section bolsters our conclusion that Esurance is not

12

obligated to pay the plaintiff underinsured motorist coverage because the plaintiff and the estate of Amari Clark each received coverage under Fraticelli's policy ($100,000) that is a greater amount than the limits of the plaintiff's own policy ($50,000).

¶ 22 The plaintiff argues that all of the provisions—including the definition of an underinsured motor vehicle, the policy's setoff provisions, and the policy's "Other Insurance" clause—when read together, create an ambiguity in the policy as a whole and require coverage in her and the estate's favor.

¶ 23 As noted above, in part III of the policy relating to uninsured and underinsured motorist coverage, it states the following under the heading "OTHER INSURANCE":

"If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the Uninsured Motorist Coverage or Underinsured Motorist Coverage provided in this section, 'we' will only pay 'our' share of the damages. 'Our' share is the proportion that 'our' limit of liability provided in this Part III bears to the total of all applicable limits on either a primary or excess basis. However:

***

Any insurance 'we' provide with respect to a vehicle 'you' do not 'own', including any temporary substitute, shall be excess over any collectible insurance providing such coverage on a primary basis."

¶ 24 The plaintiff contends that this paragraph creates an ambiguity because this language "can reasonably be interpreted by an average lay person to mean that the [underinsured motorist] coverage is available in excess to the amounts recovered from the

13

tortfeasor." The plaintiff argues that "[b]ecause the Esurance's policy specifically states that [underinsured motorist] coverage is provided by Esurance with respect to a vehicle not owned by [the plaintiff], it 'shall be excess over any collectible insurance providing such coverage on a primary basis' " thereby triggering Esurance's duty to pay its proportion of the total policy limits.

¶ 25    Esurance argues that the "other insurance" provisions in the policy are limiting provisions and do not in themselves create coverage. Esurance further argues that when the "excess over any collectible insurance" paragraph is read in conjunction with the introductory paragraph, it is clear that the other "collectible insurance providing such coverage on a primary basis" refers to uninsured motorist, underinsured motorist, or similar coverage.

¶ 26    "Only when a policy is triggered and the insurer becomes obligated to pay *** does the 'other insurance' clause come into play" to allow liability to be apportioned among insurers. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 200 (1986); see also *Farmers Automobile Insurance Ass'n v. Rowland*, 379 Ill. App. 3d 696, 698 (2008) (before the "other insurance" clause comes into play, there must be insurance under the policy in the first place). " 'Other,' as relevant here, means 'additional.' Merriam-Webster's Collegiate Dictionary 821 (10th ed. 2001)." *Farmers Automobile Insurance Ass'n*, 379 Ill. App. 3d at 698. Because there is no insurance under the policy, there can be no "other" insurance with which Esurance can share the loss. *Id.* "Put another way, because [the] policy unambiguously denies [underinsured motorist] coverage here, its proportional share of the total coverage would be zero." *Id.*

14

¶ 27 The plaintiff cites *Hartford Underwriters Insurance Co. v. Ledbetter*, 353 S.W.3d 645 (Mo. Ct. App. 2011), a Missouri Court of Appeals case, which interpreted an underinsured motorist provision that is similar to the one in this case. The plaintiff's reliance on *Ledbetter*, however, is misplaced. *Ledbetter* is a Missouri case, applying Missouri law, and is therefore not binding precedent in Illinois. See *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 186 (2005) ("this court is not bound to follow decisions from other states"). Moreover, the policy here contained a choice-of-law provision, explicitly stating that any dispute "as to the coverage provided or the provisions of the Policy shall be governed by the laws of Illinois."

¶ 28 In sum, pursuant to the Illinois Insurance Code and the express terms of the policy, the plaintiff and the estate of Amari Clark cannot recover the policy limits under plaintiff's Esurance policy, since each recovered an amount under Fraticelli's policy ($100,000) that is greater than plaintiff's policy limits ($50,000). The foregoing definitions of an underinsured motor vehicle provide that Fraticelli's vehicle was not underinsured because Fraticelli's policy limits ($100,000) exceed plaintiff's policy limits ($50,000). "[A]n 'other insurance' provision does not create an ambiguity where an unambiguous provision otherwise bars coverage." *Farmers Automobile Insurance Ass'n*, 379 Ill. App. 3d at 698. Accordingly, the plaintiff's attempt to rely on the "other insurance" provision to create an ambiguity fails.

15

¶ 29                               CONCLUSION

¶ 30    For the reasons stated herein, we reverse the judgment of the circuit court of St. Clair County granting summary judgment in favor of the plaintiff.   We remand the cause to the circuit court to enter judgment in Esurance's favor.

¶ 31    Reversed and remanded.

¶ 32    JUSTICE GOLDENHERSH, dissenting.

¶ 33    I respectfully dissent.  A plain reading of the "Limit of Liability" section quoted in the majority opinion, when read in isolation, would suggest Esurance is not obligated to pay underinsured motorist coverage to its insured when its insured has received coverage under a separate policy that exceeds the insured's own policy limits.  Thus, as it relates to the instant case, this section alone suggests Esurance is not obligated to pay plaintiff's underinsured motorist coverage because plaintiff and the estate of Amari Clark each received coverage under Fraticelli's policy ($100,000) that is a greater amount than the limits of plaintiff's own policy ($50,000).   However, when interpreting an insurance contract, courts must read the policy provisions together and not in isolation.  *Johnson*, 377 Ill. App. 3d at 607.

¶ 34    In addition to the "Limit of Liability" section, the policy further provides an "Other Insurance" clause which contains ambiguity which must be construed in favor of

16

plaintiff and the estate of Amari Clark. Specifically, the "Other Insurance" clause states in relevant part:

"OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the Uninsured Motorist Coverage or Underinsured Motorist Coverage provided in this section, 'we' will only pay 'our' share of the damages. 'Our' share is the proportion that 'our' limit of liability provided in this Part III bears to the total of all applicable limits on either a primary or excess basis. However:

1. Any recovery for damages under all policies or provisions of coverage may equal, but not exceed, the highest applicable limit for any one vehicle under any one insurance policy providing coverage on either a primary or excess basis.

2. Any insurance 'we' provide with respect to a vehicle 'you' do not 'own', including any temporary substitute, shall be excess over any collectible insurance providing such coverage on a primary basis."

¶ 35 The plain language of the "Other Insurance" clause indicates Esurance has contemplated situations in which an insured may recover underinsured motorist coverage in excess to amounts already recovered under the tortfeasor's separate insurance policy. The "Other Insurance" clause expressly states that Esurance will provide underinsured motorist coverage to a vehicle not owned by the insured, and this coverage "shall be

17

excess over any collectible insurance providing such coverage on a primary basis." Accordingly, I find plaintiff's Esurance policy containing underinsured motorist coverage limits of $50,000 per person and $100,000 per occurrence which may be obtained in excess of what was recovered under Fraticelli's insurance policy.

¶ 36 Esurance's primary argument on appeal concerns whether plaintiff's underinsured motorist coverage was triggered. Esurance argues the statutory and policy definitions of an underinsured motor vehicle demonstrate that Fraticelli's vehicle was not an underinsured vehicle, and, therefore, underinsured motorist coverage was not triggered under plaintiff's policy. Esurance contends underinsured motorist coverage cannot be owed to plaintiff and the estate of Amari Clark, since plaintiff was not involved in an accident with an underinsured motor vehicle.

¶ 37 The Insurance Code defines an underinsured motor vehicle as follows:

"For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such

18

coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." 215 ILCS 5/143a-2(4) (West 2008).

¶ 38 Consistent with the statutory definition above, the policy at issue defines an underinsured motor vehicle as follows:

" 'Underinsured motor vehicle' means a land motor vehicle of any type to which a bodily injury liability bond, policy or other security required to be maintained under Illinois law applies at the time of the 'accident' but the sum of the limits of liability for 'bodily injury' under that bond, policy or other security to an 'insured' is less than the Underinsured Motorist Bodily Injury Coverage limit of liability under this policy."

¶ 39 As indicated above, the insuring agreement provided under the underinsured motorist coverage portion of the Esurance policy incorporates the above definition of an underinsured motor vehicle, and states in relevant part:

"INSURING AGREEMENT: UNDERINSURED MOTORIST BODILY INJURY COVERAGE

In return for payment of the premium for this coverage when due, and subject to the limits of liability, 'we' agree with 'you' as follows:

1. 'We' will pay compensatory damages that an 'insured' is legally entitled to recover from the 'owner' or operator of an 'underinsured motor vehicle' because of 'bodily injury':

19

A. Sustained by an 'insured'; and

B. Caused by an 'accident'."

¶ 40   I disagree with Esurance's assertion that plaintiff and the estate of Amari Clark cannot recover the policy limits under plaintiff's Esurance policy.  While the foregoing definitions of an underinsured motor vehicle suggest Fraticelli's vehicle was not underinsured because Fraticelli's policy limits ($100,000) exceed plaintiff's policy limits ($50,000), this does not preclude plaintiff and the estate of Amari Clark from recovery under plaintiff's Esurance policy.

¶ 41   The instant case closely resembles *Hartford Underwriters Insurance Co. v. Ledbetter*, 353 S.W.3d 645 (Mo. Ct. App. 2011), a Missouri Court of Appeals case that interpreted a nearly identical underinsured motorist provision.  Although this court is not bound to follow a Missouri appeals court decision, such decision can provide guidance and serve as persuasive authority.

¶ 42   The litigation in *Ledbetter* arose from an automobile accident in which the insured was injured after her vehicle was struck by a vehicle operated by Danny Harris (Harris). The insured brought suit against Harris for injuries sustained in the accident.  At the time of the accident, Harris was covered by an insurance policy with limits of $50,000 for injuries sustained by a single person in an automobile accident.  The insured's suit against Harris was settled in exchange for the insured receiving Harris's policy limits of $50,000 and a dismissal of the lawsuit.

¶ 43    Also at the time of the accident, the insured held an insurance policy with Hartford Underwriters Insurance Company (Hartford), which provided $50,000 underinsured motorist coverage on each of the insured's four covered vehicles. The insured claimed entitlement to underinsured motorist coverage under the terms of the Hartford policy, which Hartford denied. Hartford argued that the vehicle operated by Harris was not an underinsured motor vehicle under the terms of the policy because Harris and Hartford each contained the same liability limits of $50,000 and Harris had already paid the insured $50,000. Since the Hartford policy defined an underinsured motor vehicle as one with liability limits less than the limits of its policy, Hartford asserted Harris's vehicle could not be considered as being underinsured.

¶ 44    In relevant part, the Hartford policy set out as follows:

" 'SECTION II—UNDERINSURED MOTORISTS COVERAGE

* * *

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury * * *

* * *

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

21

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for [underinsured motorist] is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for [underinsured motorist] is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident

* * *

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this Part:

1. Any recovery for damages under all policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

22

2. *Any insurance we provide with respect to a vehicle you do not own shall be*

*excess over any collectible insurance providing such coverage on a*

*primary basis.*' " (Emphasis in original.) *Ledbetter*, 353 S.W.3d at 647-48.

¶ 45 The trial court entered summary judgment for Hartford, and the insured appealed. The court of appeals reversed the trial court after finding the "other insurance" provision of the policy created an ambiguity that must be construed in favor of the insured. As indicated above, the "other insurance" clause at issue provided:

" 'Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.' " *Ledbetter*, 353 S.W.3d at 648.

¶ 46 After reviewing the "other insurance" clause, the court determined:

"[A]n objective examination of the 'excess' language of the Other Insurance clause suggests not just that this language might reasonably be interpreted by an average lay person to mean underinsured coverage was excess to amounts recovered from the tortfeasor ***, it could also be interpreted to mean that this language prevailed over the preceding and apparently conflicting language contained in the [P]olicy's definition of underinsured and Limits of Liability sections. [Citation.] This created an ambiguity which must be resolved in favor of Insured and in favor of [underinsured motorist] coverage under the terms of the Policy." (Internal quotation marks omitted.) *Ledbetter*, 353 S.W.3d at 652.

23

¶ 47    Similar to *Ledbetter*, plaintiff here is seeking to recover underinsured motorist limits ($50,000) in excess to an amount recovered under a separate policy ($100,000), despite the amount already recovered being equal to or greater than plaintiff's underinsured motorist limits.  As in *Ledbetter*, this court is being asked to examine the excess language in the "Other Insurance" clause of plaintiff's Esurance policy.  Notably, the policy provisions in *Ledbetter* and the instant case contain nearly identical "Limit of Liability" and "Other Insurance" clauses.   Both policy provisions also contain corresponding definitions of what constitutes an underinsured motor vehicle.

¶ 48    Given the plain language of the "Other Insurance" clause, "[a]ny insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis," along with the court's reasoning in *Ledbetter*, which is persuasive authority, I find there is an ambiguity in plaintiff's policy which must be construed in favor of the insured.  This is not a case where one must be creative to find an ambiguity.  As in *Ledbetter*, the excess language of the "Other Insurance" clause can reasonably be interpreted to denote underinsured coverage in excess to amounts recovered from the tortfeasor.  Further, the "Other Insurance" clause can also reasonably be interpreted to denote that the excess language prevails over the conflicting language contained in the policy's definitions regarding the underinsured and limit of liability provisions.

¶ 49    For these reasons, I conclude there is an ambiguity in plaintiff's Esurance policy that must be construed in favor of the insured.  Thus, plaintiff and the estate of Amari Clark may obtain coverage under plaintiff's Esurance policy in excess to what was

received under Fraticelli's policy. Accordingly, the trial court did not err in awarding $50,000 to plaintiff and $50,000 to the estate of Amari Clark under plaintiff's Esurance policy in addition to the $100,000 each received under Fraticelli's policy.

¶ 50　Esurance cites to this court's decision in *Thurman v. Grinnell Mutual Reinsurance Co.*, 327 Ill. App. 3d 920 (2002), in support of its argument that underinsured motorist coverage cannot properly be found to be owed to plaintiff. At issue in *Thurman* was whether the plaintiff was entitled to underinsured motorist coverage under her policy where the limits of her coverage were less than the limits of the bodily injury liability insurance of the at-fault driver from which the plaintiff recovered the maximum amount. The dispositive question presented to this court was whether section 143a-2(4) of the Insurance Code prohibited plaintiff from recovering the underinsured motorist coverage benefits under her policy.

¶ 51　The version of section 143a-2(4) in effect at the time of the accident included the following provision:

" '[T]he *maximum amount payable* by the underinsured[-]motorist[-]coverage carrier *shall not exceed* the amount by which the *limits* of the underinsured[-]motorist coverage *exceeds* [*sic*] the *limits* of the bodily[-]injury liability insurance of the owner or operator of the underinsured motor vehicle.' (Emphasis added.) 215 ILCS 5/143a-2(4) (West 1998)." *Thurman*, 327 Ill. App. 3d at 928.

¶ 52   After reviewing the above provision, this court found no ambiguity.  Specifically, this court stated that section 143a-2(4) makes it "clear that where the *limits* of the underinsured-motorist coverage do not exceed the *limits* of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle, there is no amount payable by the underinsured-motorist-coverage carrier."    (Emphasis in original.) *Thurman*, 327 Ill. App. 3d at 929.

¶ 53   *Thurman* is distinguishable from the instant case; there is no evidence that the policy at issue in *Thurman* contained language similar to the "Other Insurance" provision of plaintiff's Esurance policy.  For the reasons stated above, the "Other Insurance" clause creates an ambiguity when interpreting the policy as a whole which must be construed in favor of coverage for the insured.

¶ 54   Citing to section 143a-2(4) of the Insurance Code in its current version, Esurance further alleges the trial court improperly interpreted or ignored the policy and Insurance Code's setoff provisions.  Esurance asserts the policy's setoff provisions unambiguously establish its right to set off the amount plaintiff received under Fraticelli's policy.

¶ 55   Section 143a-2(4) of the Insurance Code provides, in relevant part:

"The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 2008).

26

¶ 56    Esurance's argument is misplaced.  Here, plaintiff does not argue the policy's setoff provisions are ambiguous.  Rather, plaintiff concedes the policy's setoff provisions are unambiguous when read in isolation from the rest of the policy, as those provisions clearly limit Esurance's coverage.  However, insurance policies are not to be read in isolation, but as a whole.  After carefully considering the setoff provisions along with all other portions of the policy, particularly the "Other Insurance" clause, I find an ambiguity which must be construed in favor of the insured.

¶ 57    Esurance also argues plaintiff's claim should be barred by the anti-stacking language provided in the policy.  In support of its argument, Esurance cites to the following three cases: *Willison v. Economy Fire & Casualty Co.*, 294 Ill. App. 3d 793 (1998); *McElmeel v. Safeco Insurance Co. of America*, 365 Ill. App. 3d 736 (2006); *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11 (2005).

¶ 58    Each of the above-referenced cases involved a plaintiff seeking to stack the insurance benefits of either multiple policies issued by the same insurer or the coverage benefits for multiple vehicles covered under the same policy.  These courts held that the anti-stacking clauses provided in the policies unambiguously prohibited the plaintiff from stacking uninsured motorist benefits.

¶ 59    The instant case is distinguishable from the three cases cited above.  Here, plaintiff is not seeking to stack coverage.  Rather, plaintiff is requesting the underinsured motorist limits provided in the declarations page of her personal automobile policy for the single vehicle she owned in excess to the bodily injury limits recovered under Fraticelli's

27

separate policy. Unlike the three cases Esurance cites above, plaintiff is not attempting to stack similar coverage limits.

¶ 60 Lastly, Esurance asserts the introductory language in the "Other Insurance" section of the policy demonstrates that the "Other Insurance" section is only implicated in situations where the insured attempts to stack multiple underinsured motorist limits or coverage that is similar to the insured's underinsured motorist coverage, which Esurance alleges is not the case here. The introductory language Esurance references provides:

> "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the Uninsured Motorist Coverage or Underinsured Motorist Coverage provided in this section, 'we' will only pay 'our' share of the damages."

¶ 61 Esurance argues that even if plaintiff's underinsured motorist coverage were to be triggered, the policy's "Other Insurance" provisions are not implicated because plaintiff is not attempting to obtain underinsured motorist coverage under different policies. I disagree with Esurance's proposition.

¶ 62 Here, plaintiff is seeking the uninsured motorist limits under her personal automobile policy in excess to the bodily injury limits recovered under Fraticelli's policy for injuries sustained in the same accident. Importantly, both Fraticelli's bodily injury liability coverage and plaintiff's underinsured motorist coverage protect similar risks in this case, as both concern the damages sustained by plaintiff and Amari Clark in the accident. I cannot say these two coverages are so dissimilar such that the "Other

28

Insurance" clause does not apply. Accordingly, I would reject Esurance's argument concerning the introductory language of the "Other Insurance" clause.

¶ 63    For the reasons stated herein, the judgment of the circuit court of St. Clair County granting summary judgment in favor of plaintiff and against Esurance should be affirmed.

2016 IL App (5th) 150083

NO. 5-15-0083

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| APRYL SHERROD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-MR-411 |
| | ) | |
| ESURANCE INSURANCE SERVICES, INC., | ) | Honorable |
| | ) | Richard A. Aguirre, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**        October 4, 2016
**Motion to Publish Granted:**    November 21, 2016
**Opinion Filed:**             November 21, 2016

_____

**Justices:**        Honorable S. Gene Schwarm, P.J.

                    Honorable Thomas M. Welch, J.,
                    Concurred
                    Honorable Richard P. Goldenhersh, J.,
                    Dissented

_____

**Attorney**
**for**
**Appellant**        Elizabeth M. Bartolucci, O'Hagan, LLC, One East Wacker Drive, Suite
                    3400, Chicago, IL 60601

_____

**Attorney**
**for**
**Appellee**         Jeremy A. Gogel, The Gogel Law Firm, 4542 West Pine Boulevard,
                    St. Louis, MO 63108

_____